THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY BRAGGS, Defendant-Appellant.

First District (5th Division) No. 1—86—0823

Opinion filed December 30, 1988.—Modified opinion filed February 10, 1989.—Rehearing denied July 25, 1989.

Randolph Stone, Public Defender, of Chicago (Linda J. Deeley, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Lynda A. Peters, Assistant State's Attorneys, and Jean T. McGuire Quinn, Special Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE LORENZ delivered the opinion of the court:

This appeal follows defendant's convictions, after a jury trial, on counts of aggravated sexual assault, criminal sexual assault, and unlawful restraint for which defendant received a sentence of 12 years' imprisonment.

We reverse and remand for a new trial.

We summarize below the pertinent testimony adduced at trial.

Complainant Linda Jones testified that on June 11, 1985, at approximately 12:15 p.m., she and her friend Ray accepted an automobile ride from defendant, who offered to drive Ray to class at Olive-Harvey College in Chicago. Vance Jackson was also a passenger in defendant's car. Jones stated that before reaching the college, defendant stopped at a liquor store to purchase gin and beer. Jones admitted drinking "a cup of beer." After taking Ray to the college, defendant drove to Jones' aunt's house at 95th and Jeffrey Streets to visit Jones' sister, whom defendant also knew. Jones stated that after visiting with Jones' sister and aunt for some time, Jones accompanied defendant to a liquor store where defendant bought more beer. Jones, defendant, and Jackson drank the beer.

At approximately 6:30 or 7 p.m., Jones, defendant, and Jackson left and went to look for Jones' other sister at 811 West 68th Street. However, they first proceeded to Jones' apartment so that Jones could change her pants, which were wet from rain. On the way, they saw defendant's mother, with whom Jones was acquainted, and talked with her for a few minutes. They proceeded on to Jones' apartment,

where Jones changed her pants.

Jones testified that on the way to 811 West 68th Street, defendant took Jackson home. Jones stated that they arrived at the address, she left the car and approached the house, but found that her sister was not present. Jones stated she began walking home. On the way, she again encountered defendant as he was coming out of a liquor store. Jones accepted defendant's offer of a ride home.

Jones testified that she let defendant into her apartment and went to the bathroom. She stated that when she came out of the bathroom defendant grabbed her from behind, physically picked her up and threw her down on her bed, straddled her, and began to choke her while forcibly removing her clothing. Jones testified that defendant slapped her and, when she began to scream, told her, "Shut up, bitch." Jones stated that defendant pulled his pants down to his thighs, put his penis inside her vagina and stayed on top of her for about 30 minutes, ejaculating three times. Defendant removed his penis from her vagina, pulled Jones' head, by the hair, toward his penis, and forced defendant to orally copulate him. Jones stated that she got up, told defendant she wanted to use the bathroom, got her robe, and attempted to escape through the front door of the apartment. Jones opened the door and called for help, but defendant pulled her back into the apartment.

Darrell Williams, a neighbor of Jones, testified that he heard Jones yell for help, went to Jones' apartment, and knocked on the door. When the door opened, he was able to pull Jones out. The police soon arrived and arrested defendant.

Ricco Burts, who lived in the apartment next to Jones, also testified that he was home with his girlfriend and heard Jones crying and pleading with defendant. Burts stated that he instructed his girlfriend to notify police and went to investigate. When he went into the hall, he saw Darrell Williams helping Jones out of her apartment.

Dr. Jerry Noble testified that he examined Jones at St. Bernard's Hospital. Noble stated that Jones had bruises on her right eyelid, the tip of her nose, and on the left side of her neck. Jones also had dried blood on the tip of her nose and had suffered a scratch on her right breast as well as cuts to the fingers of her right hand. Noble performed a vaginal examination and found signs of bruising. Beyond the physical examination, Noble testified that Jones appeared agitated, hysterical, and depressed.

Vance Jackson testified on behalf of defendant. Jackson stated that after defendant picked up Jones and her friend in the early afternoon of June 11, 1985, defendant, acting on Jones' request, drove

them to a building at 6531 South Lowe Street where she bought some marijuana. Jackson stated they next stopped at a liquor store where they purchased two 40-ounce bottles of beer which they drank on the way to Olive-Harvey College. After taking Jones' friend to the college, the three proceeded to Jones' grandmother's house. There they drank beer and smoked marijuana. At some point, the three returned to the liquor store to purchase a six-pack of beer. Eventually, they left the house and went to Jones' apartment, where she changed her pants. On the way, they had stopped to buy another six-pack of beer. Jackson stated that, during the drive, he had asked Jones for sex but she declined, saying she was menstruating. After leaving Jones' apartment, they stopped at 59th and Princeton Streets to pick up defendant's mother. Defendant then drove to another liquor store. Jackson testified Jones bought another 40-ounce bottle of beer. Defendant drove his mother home and then drove around the block while they finished drinking the beer. Jackson stated defendant took him home.

During cross-examination, the following exchange took place:

"Q. [Assistant State's Attorney]: Let me ask you this, Mr. Jackson. Were you present when the defendant's mother offered the victim $500 to drop the charges?

[Defendant's Counsel]: Objection, Judge.

THE COURT: Objection sustained.

[Defendant's Counsel]: Move for a mistrial.

THE COURT: Overruled.

Q. [Assistant State's Attorney]: Were you present at any time when the defendant's mother talked to Linda Jones?

A. [Jackson]: I don't know anything about it.

[Assistant State's Attorney]: Judge, I don't have any other questions.

[Defendant's Counsel]: We have no questions. The defense rests."

At the conclusion of Jackson's testimony, a short recess was taken during which time defendant's counsel again moved for mistrial based on the inquiry concerning a bribe. That motion was denied. Defendant's counsel then requested leave of court to "reopen" the question of a mistrial based on the improper conduct of the assistant State's Attorney, arguing that the jury would not be able to disregard the question to the prejudice of defendant. The trial judge also denied that request, stating that he believed the question had no effect on the jury. Defendant was eventually convicted.

Opinion

On appeal, defendant raises 10 separate issues as bases for reversal. However, we need here address only defendant's contention that it was error for the State to insinuate to the jury that defendant's mother had tried to bribe the complainant to forgo prosecution of defendant, because we conclude that reason is sufficient to require retrial.

■ Illinois courts have long recognized the error present when the State, on cross-examination, asks a defense witness questions, presuming facts not in evidence, as a precursor to impeachment of that witness, in the absence of rebuttal evidence to substantiate the inquiry. (*People v. Rivera* (1986), 145 Ill. App. 3d 609, 619, 495 N.E.2d 1088, 1095.) The danger inherent in such situations being that the jury will ignore any denial, presume the accuracy of the questions' insinuation or innuendo, and substitute that presumption for proof. (*Rivera*, 145 Ill. App. 3d at 619, 495 N.E.2d at 1095.) For reasons which follow, we believe such a situation was present below and inevitably contributed to defendant's conviction.

The State contends any error resulting from the State's question was harmless because there was no response to the question as defendant's objection was immediately sustained and, therefore, evidence rebutting the insinuation was unnecessary since there was nothing to rebut. The State also argues that the question does not form a basis for reversal because the insinuation was ambiguous, thus not prejudicial, and, further, that the question's purpose was only to establish Jackson's bias. Lastly, the State maintains that overwhelming evidence of guilt minimized any prejudicial effect of the question.

■ We do not find merit in any of the above contentions. First, the State's assertion that Jackson made no response to the question is simply an inaccurate representation of the record. As set out above, in response to the assistant State's Attorney's second question related to the purported conversation between defendant's mother and complainant, Jackson replied, "I don't know anything about it." No immediately sustained objection followed that question. Jackson's denial cannot be ignored. The State's failure to present evidence thereafter to rebut the denial created the type of insinuation Illinois courts have long sought to guard against.

Further, we are not persuaded that the resulting insinuation was ambiguous or that the question merely pertained to Jackson's bias. A careful reading of the formulation of the initial question put to Jackson specifically implies, as fact, that defendant's mother offered complainant the $500 bribe; the actual inquiry being only whether or not

Jackson was present at that time. The second formulation of the question, while not specific to the purported bribe, similarly inquires of Jackson only whether he was present during any time when defendant's mother talked to complainant. We conclude the effect of these questions was to establish, by insinuation, that a conversation concerning the bribe had in fact taken place, notwithstanding the State's claim that the question's intended purpose was to elicit Jackson's bias. We view that questioning as highly improper in the absence of rebuttal evidence to support the resulting insinuation. And, because of the nature of the questioning, we are not persuaded that the insinuation can be considered harmless.

■ However, we otherwise conclude, without making any finding as to defendant's guilt or innocence, that the evidence at trial was sufficient for the trier of fact to find defendant guilty beyond a reasonable doubt such that the risk of subjecting defendant to double jeopardy in a new trial is removed. (See *People v. Littlejohn* (1986), 144 Ill. App. 3d 813, 828, 494 N.E.2d 677, 687.) We therefore reverse defendant's conviction and remand the cause to the circuit court for retrial.

Reversed and remanded.

PINCHAM and MURRAY, JJ., concur.