THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY SCHMITT, Defendant-Appellant.

Fourth District   No. 4—89—0264

Opinion filed October 25, 1990.—Rehearing denied November 27, 1990.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Denise M. Ambrose, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

An Adams County jury convicted the defendant of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—13). At trial, the victim, defendant's nine-year-old son, C.S., testified via closed circuit television, as permitted by section 106A—3 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 106A—3). On appeal, the defendant challenges the constitutionality of this procedure, raises a denial of due process claim, various evidentiary issues, and urges an amendment to the sentencing order to clarify discrepancies in the entries.

C.S.'s parents were divorced when he was five years old. His mother has legal custody but C.S. visited his father, the defendant, every weekend at the house where defendant and the defendant's mother lived. C.S. testified that, on occasion, the defendant asked him to lie down on a couch. The defendant would then remove C.S.'s pants and underwear and lick his penis. C.S. told his grandmother, Dorothy Post, defendant also licked his rectum.

C.S. stopped visiting the defendant in July 1988 after Post observed C.S. licking the buttocks of one of his cousins. When she confronted him with the behavior, C.S. denied licking his cousin. Post then asked, "Who did that, [C.S.]? Did you get that from Mindy or Tim?" C.S. testified he told her he got it from Tim, his father. Post testified C.S. told her he learned the behavior from his dad.

The defendant was charged by information with aggravated criminal sexual assault and criminal sexual assault. He subsequently filed several motions in limine, including a motion to prohibit the State from calling an expert witness to testify about rape-trauma syndrome. At the hearing on this motion, the prosecutor represented to the court, Judge Cashman, that C.S. had been traumatized by the abuse and had become hostile and angry, and suffered nightmares and bedwetting.

Subsequently, the State filed a motion to videotape C.S.'s testimony pursuant to section 106A—2 of the Code. (Ill. Rev. Stat. 1987, ch. 38, par. 106A—2.) The State argued the procedure was necessary to protect C.S. from further trauma:

"I think at his age he doesn't have the ability to put in perspective the seriousness of the sexual acts or the fact that his

first sexual experience may have well been a homosexual experience with his father. To ask this child to get in front of 12 people, 14 people with alternates, and describe this type of sexual relations with his father I think is going beyond what we could ever appropriately accomplish in a court of justice.

\*\*\*

The psychological reports that I have seen could show a rather fragile child that will suffer consequences and will suffer consequence no matter what we do. If we don't do anything, he suffers. If we do, he suffers. I hope we can just minimize it by videotaping."

Judge Cashman denied the motion, after determining the statute was unconstitutional. (On June 19, 1989, the Illinois Supreme Court found the videotape statute unconstitutional. *People v. Bastien* (1989), 129 Ill. 2d 64, 541 N.E.2d 670.)

The State then filed a motion to allow C.S.'s testimony via closed-circuit television. The State argued the procedure was in C.S.'s best interest:

"[I]n this situation we are dealing with a nine-year-old child. He is the son of the Defendant, and to ask a child at that age to describe for a huge courtroom that is a gigantic courtroom to a youngster, in front of 14 strangers that his first sexual experience is a homosexual experience with his father is per se overwhelmingly psychologically damaging. You can't assume that any child would be able to comfortably and clearly describe his experiences."

The defendant objected to the motion, claiming the procedure would violate his rights under the confrontation clause. He also argued the State failed to show the procedure was necessary. Judge Welch presided at this motion hearing and overruled the defendant's objections. Judge Welch specifically found the closed-circuit television procedure was in C.S.'s best interest.

At trial, C.S. was the first witness and testified by closed-circuit television. The prosecutor, defense counsel, defendant, Judge Welch, C.S., and C.S.'s mother were in the judge's chambers during C.S.'s testimony, which was broadcast into the courtroom for the jury. There were two television monitors in the courtroom. A clear, color picture and clear sound were transmitted instantaneously from the judge's chambers to the courtroom. The defendant was not screened from C.S.'s sight. The camera focused on C.S.'s upper body and face.

Before leaving the courtroom to go to chambers, Judge Welch explained to the jury that C.S. would testify by closed-circuit television

from chambers. He told the jury who would be in the room with C.S. during his testimony and who would remain in the courtroom. He also explained how the equipment functioned and instructed the jury to adjust the television monitors in the courtroom if necessary. The bailiff remained in the courtroom and was to notify the court immediately if there were equipment problems in the courtroom.

The defendant also testified at trial and denied ever licking C.S.'s penis. He hypothesized that C.S. made the statements to avoid punishment for licking his cousin. The jury convicted the defendant on both counts and the circuit court sentenced him to nine years' imprisonment.

The first issue is whether the circuit court violated the defendant's right of confrontation under the sixth amendment of the United States Constitution and under article I, section 8, of the Illinois Constitution when it permitted C.S. to testify via closed-circuit television. The defendant argues his constitutional right of confrontation was violated because the jury was not present in the room with C.S. while he testified and because the State failed to show the procedure was necessary.

■ The right of confrontation is unique to the defendant and functions to guarantee the defendant a face-to-face meeting with witnesses appearing before the trier of fact. (*Coy v. Iowa* (1988), 487 U.S. 1012, 1016, 101 L. Ed. 2d 857, 864, 108 S. Ct. 2798, 2800.) This right of confrontation:

> "(1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination ***; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *California v. Green* (1970), 399 U.S. 149, 158, 26 L. Ed. 2d 489, 497, 90 S. Ct. 1930, 1935.

■ This case does not present a confrontation problem. The statute specifically includes the defendant and his attorney in the room where the child is testifying (Ill. Rev. Stat. 1987, ch. 38, par. 106A—3). The trial court here followed the provisions of the statute, and the defendant and his attorney were in the judge's chambers while C.S. testified. The defendant was thus afforded face-to-face confrontation with C.S. and an opportunity to cross-examine the child. The defendant's attorney cross-examined C.S., who testified under oath and indicated he understood the importance of telling the truth.

"[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." (*Delaware v. Fensterer* (1985), 474 U.S. 15, 22, 88 L. Ed. 2d 15, 22, 106 S. Ct. 292, 295.)

The defendant in this case was given full opportunity to probe and expose infirmities in C.S.'s testimony. C.S. was not forgetful, confused, or evasive. Instead, his testimony was clear, convincing, unrehearsed, and reliable.

The final function of the confrontation right is allowing the jury to observe the witness' demeanor. The jury here had adequate opportunity to assess the child's demeanor while he testified, though the jury was not in the room with C.S. The television camera provided a clear view of C.S.'s upper body, face, and facial expressions and the picture was transmitted in color. The camera angle may have afforded the jury a closer view of C.S. than would have been possible from the witness stand in the courtroom.

We reject the defendant's arguments that the jury could not sufficiently assess C.S.'s demeanor because his entire body was not shown. Likewise, we reject the defendant's argument that there was error because the camera failed to show the entire room and those present. As stated heretofore, defendant was present during C.S.'s testimony, to cross-examine, to expose infirmities, and to call to the attention of the jury, as fact finder, reasons to give "scant weight" to the same. We find no error or unfairness, particularly in view of Judge Welch's comments to the jury in which he listed those persons who would be in chambers during C.S.'s testimony.

■ The defendant also contends the State failed to show the closed-circuit-television procedure was necessary in this case. The statutory standard is not necessity but "the best interest of the child." (Ill. Rev. Stat. 1987, ch. 38, par. 106A—3.) Judge Welch specifically found the closed-circuit television procedure was in C.S.'s best interest. The record supports this finding and thus there was no abuse of discretion.

Further, the statute does not require a hearing to determine whether the best interest of the child would be served by allowing him to testify via closed-circuit television. The defendant would have this court require such a hearing. The legislature did not impose such a requirement and therefore we decline to do so. Had the legislature intended to require a hearing, it would have so provided. For exam-

ple, the legislature provides a hearing when section 115—10 of the Code is invoked (Ill. Rev. Stat. 1987, ch. 38, par. 115—10). That statute provides a hearsay exception in prosecutions for sexual abuse of a child under age 13 if "[t]he court finds in a *hearing*," while 106A—3 states the court may "upon finding that it is in the best interest of the child." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, pars. 115—10(b)(1), 106A—3.) In this case the representations of the prosecutor to the court, that closed-circuit television was in C.S.'s best interest, provided a sufficient basis for the finding by the court.

The defendant urges application of the recent United States Supreme Court decision in *Maryland v. Craig* (1990), 497 U.S. ____, 111 L. Ed. 2d 666, 110 S. Ct. 3157. The *Craig* decision is distinguishable on several grounds and thus inapplicable to this case.

The defendant in *Craig* owned and operated a prekindergarten and kindergarten center. She was accused and convicted of sexually abusing six-year-old B.E. The State moved to allow B.E. to testify via closed-circuit television and introduced expert testimony that B.E. would suffer " 'serious emotional distress such that [[she] could not] reasonably communicate,' [citation], if required to testify in the courtroom." *Craig*, 497 U.S. at ____, 111 L. Ed. 2d at 676, 110 S. Ct. at 3161.

The defendant challenged the constitutionality of the statute, alleging it denied her the right of confrontation. Unlike the Illinois statute, the Maryland statute excluded the defendant from the room where the child testified and required the defendant to observe the proceedings by closed-circuit television. Thus the *Craig* case involved confrontation clause issues.

The Court concluded Maryland's closed-circuit television procedure preserved the requisites of the confrontation clause.

> "[T]he child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." *Craig*, 497 U.S. at ____, 111 L. Ed. 2d at 682, 110 S. Ct. at 3166.

Various decisions, including *Craig*, require a showing that the child needs special protection before the procedure may be employed. (*Coy*, 487 U.S. at 1020-21, 101 L. Ed. 2d at 866-67, 108 S. Ct. at 2802-03.) "After *Coy*, it is clear that such a procedure, which shields the child witness from facing the defendant during the testimony, is constitutionally acceptable, if at all, only if there is an individualized finding that the witness is in need of such protection." (*Bastien*, 129

Ill. 2d at 73, 541 N.E.2d at 674.) The Maryland statute required a determination by the judge "that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." Md. Cts. & Jud. Proc. Code Ann. §9—102(a)(1)(ii), at 412 (1989).

As discussed earlier, the Illinois statute requires only a finding that the closed-circuit television procedure would be in the child's "best interest." (Ill. Rev. Stat. 1987, ch. 38, par. 106A—3.) The trial court here made an individualized finding that C.S.'s best interest would be served by allowing him to testify by closed-circuit television. Thus, *Craig* is also distinguishable as to the statutory showing required to invoke the closed-circuit television procedure.

The circuit court in this case complied with the statutory requirements for using closed-circuit television. The court first determined such a procedure would be in C.S.'s best interest. Only those persons enumerated in the statute were permitted in the judge's chambers while C.S. testified and his testimony was transmitted to the jury in the courtroom. C.S. testified under oath in the physical presence of the defendant and the defendant's attorney cross-examined the child. The defendant was not denied his rights under the confrontation clause when C.S. testified via closed-circuit television.

██ The defendant contends the closed-circuit television procedure denied him due process. We disagree. The statute which allowed C.S. to testify by closed-circuit television was constitutional and followed meticulously by Judge Welch. There was no denial of due process.

The defendant next objects to the admission of Post's testimony that C.S. told her the defendant licked C.S.'s rectum, because he was charged only with having licked the child's penis. The defendant claims this testimony violated section 115—10 of the Code.

Prior to admitting corroborative-complaint testimony, the circuit court held a hearing pursuant to section 115—10(b)(1). At this hearing, Post testified C.S. told her he was being touched by his dad in that he was licked on his penis and his butt. Defense counsel argued section 115—10 only permits witnesses to corroborate that a complaint was made, but no details of the complaint. After hearing Post's testimony, the trial judge concluded identification of the perpetrator was unnecessary, and ruled Post could testify "that he [C.S.] told her [Post] he was licked on the penis and on the butt." The judge reiterated this latter aspect of the ruling before hearing the State's offer on the police officer's corroborative-complaint testimony. Defense counsel made no objection to Post testifying that C.S. complained of being licked on the butt.

In proceedings before the jury, the prosecutor asked Post whether C.S. identified where on his body he had been licked, and Post answered, "on his penis and on his rectum." Several questions later, defense counsel renewed an objection lodged earlier and moved for a mistrial because Post "violated the Court's previous order restraining the testimony that can be given," basically objecting because Post testified C.S. identified defendant as the person who committed the acts in question. The court overruled the objection, stating identification was not the issue.

In cross-examination, defense counsel questioned Post as follows on her report to the police:

"Q. [By defense counsel:] And in that report you never said anything about the licking of the rectum, did you?

A. [By Post:] I don't recall.

Q. If he had done that I am sure it would be in that report, would it not?

A. I thought I did, but I may not have. I don't know."

Defendant's motion for a new trial did not include this specific issue.

Raising the issue for the first time on appeal, defendant argues Post's testimony that he licked C.S.'s rectum was evidence of a crime with which he was not charged. He maintains the testimony should not have been admitted as it was highly prejudicial and biased the jury against him. Generally, evidence of collateral crimes is inadmissible if relevant only to show a defendant's propensity to commit a crime. *People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238, 242.

■ The State argues defendant has waived this issue. We agree—first, by failure to raise this objection below and by specific objection on other grounds (*People v. Killebrew* (1973), 55 Ill. 2d 337, 341-42, 303 N.E.2d 377, 380); second, by cross-examining on this point (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 287, 393 N.E.2d 1098, 1119 (and cases cited therein); *People v. Bost* (1980), 80 Ill. App. 3d 933, 951-52, 400 N.E.2d 734, 748; *People v. Darby* (1978), 58 Ill. App. 3d 294, 298, 374 N.E.2d 229, 232; *People v. Haywood* (1978), 60 Ill. App. 3d 236, 247, 376 N.E.2d 328, 336; *People v. Calvin* (1969), 116 Ill. App. 2d 471, 481, 253 N.E.2d 922, 927); and, third, by failure to include it in his motion for a new trial (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130, *cert. denied* (1988), 488 U.S. 917, 102 L. Ed. 2d 263, 109 S. Ct. 274). Defendant urges application of the plain error exception to the waiver rule. However, this exception "will be applied only when substantial rights of the defendant are affected

or the evidence in the case is closely balanced." (*People v. Bailey* (1988), 177 Ill. App. 3d 679, 682, 532 N.E.2d 587, 590; 107 Ill. 2d R. 615(a).) This is not such a case.

■ On the merits, there was no error in admission of this testimony. Section 115—10, as amended, permits admission of such details of the child's complaint, including identification, even if not on an element of the crime charged, and absent testimony by the child as to that particular detail. (*People v. Rushing* (1989), 192 Ill. App. 3d 444, 451, 548 N.E.2d 788, 792; *People v. Morton* (1989), 188 Ill. App. 3d 95, 102, 543 N.E.2d 1366, 1371.) Here, the court held a proper section 115—10 hearing outside the presence of the jury in order to determine that the time, content, and circumstances of the statement provided sufficient safeguards of reliability to permit admission of the evidence as an exception to the hearsay rule; the court made the requisite statutory determination; and the court gave the cautionary instruction required by the statute (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(c)).

The defendant next argues the prosecutor repeatedly impeached him with unsupported allegations and insinuations and misstated a witness' testimony to provide a basis for disbelieving the defendant's denial of guilt.

C.S.'s mother testified at trial that several weeks after she received notice of the trial date she telephoned the defendant and told him she "thought C.S. had been through enough." She testified the defendant responded, "Yeah, I know."

On cross-examination, the defendant, upon being asked whether he remembered C.S.'s mother saying "you have put [C.S.] through enough" answered "I remember her saying that, yes" but denied any further response to the mother's statement. Although no objection was made by defendant, the prosecutor repeated essentially the same question two additional times and defendant persisted in his denial of any response. The prosecutor also, on cross-examination, asked defendant three questions whether defendant told C.S.'s mother he needed help. Defendant each time denied he made such a statement. Priscilla, in the State's case in chief, did not testify defendant told her he "needed help." There is little excuse for the prosecutor's failure to present the statement of defendant in its case in chief. Additionally, the prosecutor did not ask leave of court to call Priscilla in rebuttal concerning the statement.

During closing argument, the prosecutor made the following comments:

"Can you reasonably believe what [the defendant] said? Can

you reasonably believe his denials? He told—he testified that he didn't tell his ex-wife, Priscilla, anything. Priscilla asked the question, 'I think you have put [C.S.] through enough,' and her response that she recalled was he said, 'Yes, I know.'

Mr. Schmitt testified he was silent. Silent. A person says, 'I think you have put [C.S.] through enough.' Wouldn't it be reasonable to expect an innocent man to say, 'I have put him through enough? You have put him through all of this. You are the one who did this to him. You're the one who put it up to him.' No, if you accept Mr. Schmitt's version, he is silent, he doesn't make a reasonable denial. You accept his mother Priscilla's version, 'Yes, I know, I have put [C.S.] through enough. I abused him and that is enough.' That is the reasonable interpretation."

The defendant failed to object to both the cross-examination and the comments by the prosecutor during closing argument. Thus, the defendant has waived this issue.

■■ The defendant is correct that when the prosecutor cross-examines a defense witness, she cannot presume facts not in evidence. "The danger inherent in such situations being that the jury will ignore any denial, presume the accuracy of the questions' insinuation or innuendo, and substitute that presumption for proof." (*People v. Braggs* (1988), 184 Ill. App. 3d 756, 760, 540 N.E.2d 767, 769.) In *People v. Butler* (1974), 58 Ill. 2d 45, 317 N.E.2d 35, the prosecutor deliberately engaged in improper questioning. He asked the defendant about his living arrangements with various women to whom he was not married. The purpose of the questioning was to establish the defendant's bad moral character. "Such tactics have no place in the search for truth which is the objective of cross-examination and of the trial itself." (*Butler*, 58 Ill. 2d at 52, 317 N.E.2d at 39.) The State's cross-examination of defendant concerning statements made to a witness previously called in the State's case in chief, which are not in evidence, is error and is not condoned.

■■ In deciding whether to invoke the plain error exception, the inquiry is whether the prosecutor's remarks " 'were so inflammatory that defendant could not have received a fair trial or so flagrant as to threaten deterioration of the judicial process. [Citation.]' " (*People v. Jones* (1988), 123 Ill. 2d 387, 410, 528 N.E.2d 648, 659, quoting *People v. Albanese* (1984), 104 Ill. 2d 504, 518, 473 N.E.2d 1246, 1251.) The cross-examination of the defendant in this case was not so inflammatory as to " 'threaten deterioration of the judicial process. [Citation.]' " *Jones*, 123 Ill. 2d at 410, 528 N.E.2d at 659, quoting *Al-*

*banese,* 104 Ill. 2d at 518, 473 N.E.2d at 1251.

■ As to the closing argument comments, the United States Supreme Court has held that a prosecutor's comments during closing, though they may be "undesirable," do not deprive a defendant of a fair trial if they do not "manipulate or misstate the evidence" or implicate other specific rights such as the right to remain silent or the right to counsel. (*Darden v. Wainwright* (1986), 477 U.S. 168, 181-82, 91 L. Ed. 2d 144, 157-58, 106 S. Ct. 2464, 2471-72.) Additionally, the Illinois Supreme Court held that a prosecutor's statement, based on a legitimate inference from the proof, does not constitute improper argument. (*Albanese,* 104 Ill. 2d at 520, 473 N.E.2d at 1252.) Here, the prosecutor's closing argument was based upon the evidence and reasonable inferences to be drawn therefrom and was not improper.

■ The defendant also argues his conviction should be overturned because the cumulative effect of the errors alleged to have occurred during trial deprived him of a fair trial. We disagree. There were no errors depriving him of a fair trial, individually or cumulatively. Even if there were errors, they were harmless and do not warrant vacating the conviction.

Finally, the defendant contends, and the State agrees, this case should be remanded for correction of the sentencing order. The defendant was charged with both aggravated criminal sexual assault and criminal sexual assault. Both charges involved a single act, the defendant placing his mouth on C.S.'s penis. The jury returned guilty verdicts on both counts. The court sentenced the defendant to nine years' imprisonment for aggravated criminal sexual assault but did not impose a sentence for the criminal sexual assault conviction. One sentencing order and the notice of appeal state defendant was convicted of two counts of aggravated criminal sexual assault. A later sentencing order shows defendant was convicted of both aggravated criminal sexual assault and criminal sexual assault. We agree with the parties that the cause should be remanded to clarify the record to reflect a judgment entered on the verdict of guilty to one count of aggravated criminal sexual assault.

Affirmed as modified, and cause remanded.

SPITZ and STEIGMANN, JJ., concur.