THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID LEE ELY, Defendant-Appellant.

Fifth District   No. 5—91—0431

Opinion filed August 4, 1993.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

Defendant, David Lee Ely, appeals from his conviction after a jury trial of aggravated criminal sexual assault and from the sentence of 30 years' imprisonment imposed by the circuit court of Montgomery County. We affirm.

According to the evidence presented at trial, defendant assaulted the victim, defendant's five-year-old daughter, on or about January 30, 1991. On February 4, 1991, the victim's grandmother and two aunts arrived at the victim's school to talk to her teacher. Apparently they believed the child had been sexually abused by her father and went to her school to inform them of their concerns. The victim's teacher sat down with the victim later that day and read with her two books, "My Body is Private" and "The Private Zone." Some 30 minutes later, the victim asked her teacher to join her in the "quiet corner" of the room. The victim picked up some puppets and began acting out with the teacher an argument between the daddy and mommy puppets. As they put away the puppets, the victim told her teacher: "Don't tell my dad, but one time he asked me to suck his thing." The victim then proceeded to tell her the circumstances of the incident. According to the victim, her mother was at work, and her sister was sleeping. She, the victim, was sitting on the couch watching television. Her father turned off the television set, pulled down his jeans and underwear, and put his "thing" on her mouth. The victim also stated she told her mother, and her mother told her not to do it anymore. The teacher reported the matter to the Department of Children and Family Services (DCFS). One of their investigators, Jim Moore, came out to the victim's school to interview her. Moore, using anatomically correct drawings, had the victim identify body parts. He then asked her if she had ever put her mouth on her daddy's "nuts," another term the victim had used in the interview. She answered yes and repeated the same story she had told her teacher. Defendant was then placed under arrest. Defendant proclaimed his innocence, claiming the victim had done all of this to get back at him for breaking his promise not to drink anymore.

On March 12, 1991, defense counsel filed a motion for a pretrial determination of the victim's competency as a witness. On April 26, 1991, the State filed a motion to allow the victim's testimony to be

televised to the jury during trial. The motion to determine the victim's competency was heard first. The hearing, conducted in chambers with both parents present, revealed the victim was competent to testify. She correctly identified colors and body parts and gave accurate information as to her age, school, and church. She also was able to correctly count up to 14, say the alphabet, and write her name. The victim further told the judge she would "go to Satan" if she lied.

At the motion to present the victim's testimony to the jury via closed-circuit television, DCFS investigator Moore testified that he has interviewed between 700 and 800 minor victims of child abuse and neglect during his employment as an investigator, and that based upon his experience with the victim, he believed it would be difficult for the victim to come into a large courtroom and talk about sexual abuse by her father before 12 strangers. He opined it would be in her best interest to testify outside the jury's presence in the judge's chambers. Defense counsel argued the use of closed-circuit television would impinge on the jury's ability to judge the child's credibility. The court, after noting it already had a chance to observe the victim testify in chambers, ruled that closed-circuit television could be employed in light of the child's age and Moore's opinion.

At trial, the victim testified by closed-circuit television from the judge's chambers. Present in chambers during her testimony were the victim's mother, the prosecutor, the judge, the sheriff, defense counsel, defendant, and the technician operating the equipment. The victim initially demonstrated her competency to testify, including identifying body parts on anatomically correct drawings. She then proceeded, upon questioning, to repeat the same story of defendant sexually abusing her while she was watching television. On cross-examination, the victim reported that her father had broken his promise not to drink anymore and that one of her aunts told her her father was "nuts" because he had broken his promise. After her testimony, the court informed the jury that, prior to the television being turned on, the victim, upon seeing her father enter the chambers, asked her father to sit by her. The jury ultimately found defendant guilty of aggravated criminal sexual assault.

Defendant argues on appeal the court's determination that the use of closed-circuit television was in the best interest of the victim deprived him of a fair trial and his constitutional rights, especially when that conclusion was based solely on a presumption that a certain class of witnesses would be traumatized if required to testify in open court. The State points out defendant has waived any possible error by failing to object at trial or raise the issue in a post-trial motion.

While we agree defendant failed to preserve the matter for appeal (see *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. Friesland* (1985), 109 Ill. 2d 369, 374, 488 N.E.2d 261, 262), we feel compelled to address the matter specifically to point out to defendant the lack of merit to his contentions.

Defendant alleges the trial court engaged in a presumption that all children of a certain age should not be required to testify in open court. The record, however, does not support defendant's contention; in fact, the record clearly shows the court took great pains to avoid employing such a presumption. While it is true investigator Moore did comment on how children in general react to testifying in sexual abuse cases, he also specifically testified that he was familiar with the victim here, and that in his opinion, she would react negatively to testifying in open court before 12 strangers. He further opined it would be in her best interest to testify outside the presence of the jury. The trial court then specifically asked Moore:

> "Your opinion that it would be in [the victim's] best interest to testify in chambers, is that opinion based solely on the position that you take, that it would be better for all five-year olds to be able to testify in chambers or, in addition to that opinion, is it also particularly true in [the victim's] case because you've worked with her and interviewed her and because of her particular situation you think it's in her best interest?"

Moore replied his opinion was based on his observation of the victim and was particular to her. In making its decision to grant the State's motion to use closed-circuit television pursuant to section 106A—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 106A—3),[1] the court stated:

> "We also have the testimony of the very experienced Department of Children and Family Services Investigator saying, while he does believe generally it's not in any child's best interest to testify in front of a jury at that age, he also testified specifically about this particular young lady, this alleged victim, *** and said in her particular case he thinks it's not in her best interest and testified as to his reasons why. I have had the benefit of hearing [the victim] testify. That does make this a little bit easier, incidentally, that I had that opportunity. I think the issue is an important one because in any case it's the Court's

---

[1]Section 106A—3 has since been repealed and replaced by section 106B—1 (725 ILCS 5/106B—1 (West 1992)), effective January 1, 1992.

> intention to give the defendant a fair trial—also, the State a fair trial, for that matter. I think the State, though, has carried whatever burden is upon the State to utilize this statute. I think it is in her best interest, based upon today's hearing and also the hearing the Court has already conducted, to grant the motion."

Clearly, the trial court applied no generalized presumption in determining that it was in the victim's best interest to testify via closed-circuit television. Moreover, the trial court protected defendant's right to a fair trial by describing to the jury portions of the victim's behavior which the jury could not observe on the television monitor. Additionally, the court also complied with all statutory requirements for using closed-circuit television. The court initially determined the use of closed-circuit television was in the victim's best interest. And, defendant was permitted to be present in chambers while the victim testified and was afforded the opportunity to fully cross-examine the victim. (*Cf. People v. Bastien* (1989), 129 Ill. 2d 64, 541 N.E.2d 670.) Finally, none of the State's evidence in support of its motion pertaining to the victim's best interest was contradicted. Under such circumstances, we cannot say the trial court abused its discretion in allowing the use of closed-circuit television. (See *People v. Schmitt* (1990), 204 Ill. App. 3d 820, 562 N.E.2d 377.) As the trial court properly granted the State's motion, we find defendant was deprived of neither a fair trial nor his constitutional rights.

For the aforementioned reasons, we affirm the judgment of the circuit court of Montgomery County.

Affirmed.

CHAPMAN, P.J., and WELCH, J., concur.