Fourth Division

  April 9, 1998

No. 1-97-0950

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY.

)

v. )

)

BILLY L. JOHNSON, ) HONORABLE

) MARY MAXWELL THOMAS,

Defendant-Appellant. ) JUDGE PRESIDING.

)

JUSTICE WOLFSON delivered the opinion of the court:

The rule against hearsay evidence has been a fixed principle of Anglo-American jurisprudence since the late 1600's, when Lord Coke, in his Third Institute, denounced "the strange conceit that one may be an accuser by hearsay."  See J. Strong, McCormick On Evidence, §244 at 425 (4th ed. 1992).

    The Sixth Amendment to the United States Constitution, various State and Federal evidence codes, and common law court decisions reflect a strong preference that the accuser in a criminal case be present in open court, under oath, subject to cross-examination.

    There are exceptions to the rule against hearsay, most of  them firmly rooted in evidence law and therefore thought to be trustworthy enough to excuse the need for personal appearance,

oath, and cross-examination.  This appeal concerns an exception created by the General Assembly in cases where the defendant is accused of physically or sexually assaulting a child under the age of 13.

    We are called on to define the parameters and application of section 115-10 of the Code of Criminal Procedure (725 ILCS 5/115-10 (West 1996)).  We do so.  In the process, we find the unauthorized admission of hearsay evidence concerning uncharged conduct requires reversal and remandment of the defendant's conviction for aggravated criminal sexual assault.

FACTS

   Because this case turns on who said what to whom, we set out the testimony in some detail.

 
 On November 15, 1995, Billy L. Johnson (Johnson) was charged by indictment with two counts of aggravated criminal sexual assault, six counts of criminal sexual assault, and three counts of aggravated criminal sexual abuse, based on allegations made by C.D., Johnson's 12 year-old stepdaughter.

On December 4, 1996, Johnson's bench trial began.  At a previous hearing, a judge determined C.D. was unavailable to testify and her out-of-court statements would be admissible under section 115-10 of the Code.

At trial, the evidence against Johnson was presented through the testimony of Chicago police youth officer Stanley Richards.  Richards testified he met C.D. at the 18th District police station on October 20, 1995.  Officers Walsh and McMurdo, who brought C.D. to the station, were present during Richards' interview with her.  C.D. told Richards she had run away from home because Johnson had been sexually abusing her since she began living with him in April 1995.  Johnson, she said, would force her to allow him to pull down her panties and lick her vagina.  Recently, while in Ohio for a family funeral, Johnson came to the bedroom where C.D. was staying, licked her vagina, and then attempted to have sexual intercourse with her.  She forced him away by biting him on the arm and chest and scratching him.

After talking with C.D., Richards interviewed Johnson.  Richards informed Johnson of his constitutional rights and then told him about C.D.'s allegations.  Johnson agreed to waive his rights and speak to Richards.

Johnson admitted to Richards that he had been having sexual contact with C.D. since she began living with him in April 1995.  He said whenever C.D. wanted her freedom, or to leave the house, the price she had to pay was to submit to him.  He "got down on all fours like a dog and licked her pussy."  When he was a child, he explained, he had been forced to perform these acts on his Aunt Bertha.

When asked whether he remembered specific dates when he had sexual contact with C.D., Johnson told Richards he remembered having oral sex with C.D. sometime between September 1 and September 15, 1995.  Johnson also admitted that he "grinded on" C.D. when he was with C.D. in Ohio for a funeral in October 1995.

Because of Johnson's oral admissions, Richards notified felony review.  Assistant State's Attorney (ASA) Guinn came to the station later that evening to interview Johnson.  In Richards' presence, Johnson repeated his admissions to ASA Guinn. Again, the admissions were not reduced to writing.

As further corroboration of C.D.'s statements, Richards testified he observed bite marks and scratches on Johnson's left arm and chest area.  Richards took photographs of these marks and the photos were submitted as evidence at trial.

After the State presented its evidence, Johnson moved for an acquittal.  The court granted the motion as to seven of the 11 counts because the evidence supporting these charges referred to conduct which took place in Ohio, outside the jurisdiction of the court.  The court dismissed counts two, six, seven, eight, nine, 10, and 11.  The court denied the motion as to counts one, three, four, and five.

The first witness called by the defense was Corleatha Thompson.  She testified she had known Johnson for five years.  In September and October 1995, Johnson and C.D. lived with Thompson and her family at 3809 South King Drive.

Because C.D. did not want to go to school, Thompson testified, Johnson fought with C.D. nearly every school day.  Sometimes the fights between C.D. and Johnson became physical altercations.  Thompson said she witnessed one such incident when C.D. attempted to leave the house.  Johnson grabbed C.D., they struggled, and C.D. bit Johnson on the chest.  Other times Thompson saw C.D. scratch Johnson on his back and arms during altercations.  In the period of time C.D. lived in Thompson's home, C.D. ran away at least twice.

Johnson testified in his own defense.  He said he filed a missing persons report on October 20, 1995, because his 12-year-old daughter, C.D., had neither called nor returned home the previous day.  Johnson said C.D., who came to live with him in April 1995, had a history of running away from home.  Johnson also said he had difficulty disciplining C.D.  Sometimes, when he attempted to restrain C.D. from leaving the house, she would bite and scratch him.

After the missing persons report was filed, Johnson testified, he looked for C.D. at an apartment building on North Burling.  Johnson found C.D. on the third floor of this building, hiding behind some friends.  C.D. accompanied Johnson and the building security guard to the lobby and the police were called.  Two officers arrived.  C.D. spoke privately with one of the police officers in the security office in the building.  When the officer finished speaking to C.D., he told Johnson allegations of sexual abuse had been made against him.  One officer then took C.D. to the hospital, while the other officer took Johnson to the 18th District police station.

At the station, Johnson said, he first spoke with an unidentified assistant State's Attorney.  Johnson admitted he freely chose to speak with this State's Attorney, telling him of the disciplinary problems he was having with C.D.  Johnson said he denied the allegations of sexual abuse made by C.D.

Johnson said he was taken to the "bull pen" after he finished speaking to the assistant State's Attorney.  Johnson made some vague allegations about being threatened and insulted by officers while in the "bull pen," but said he was not questioned further until 6 or 7 p.m.  At that time Officer Richards came to the "bull pen" and asked him if he had any bite marks.  He said he did, showed the marks to the officer, and the officer took pictures of the marks.

Johnson admitted C.D. was the cause of the bites and scratches, but denied they occurred because he was abusing C.D.  He said the bites and scratches occurred during disciplinary altercations.  Johnson admitted, too, he had taken C.D. to Ohio, but denied that he abused her there.

Johnson testified he told the officer and State's Attorney C.D. was lying, trying to save herself from "going to juvenile."  Johnson said he remarked, "Why is it that you people find it easier to believe a lie than the truth?  What do you think, I am a dog that I would get down on all fours and lick my own daughter?" 

In rebuttal, the State presented the testimony of Assistant State's Attorney Guinn.  He said he was assigned to the Johnson case on October 20, 1995.  He arrived at District 18 Police Station at about 8 p.m.  At the station ASA Guinn spoke with several officers and C.D., upon her return from the hospital.  Then he spoke to Johnson.

ASA Guinn said Johnson told him C.D. had always had an "unnatural love" for him.  Johnson told him C.D., even as a young child, used to "rub up against him."  When C.D. was seven years old Johnson kicked her out of his house because of her "unnatural love" for him.

ASA Guinn also said Johnson told him when C.D. began living with him again in April 1995, she began exhibiting her "unnatural love" again.  Johnson spoke to his grandmother about this and she warned him that "incest ran in the family."  A few weeks later, one night when Johnson came home late, C.D. came to him and told him she would "do anything to get her freedom."  Johnson then rubbed his penis against her vagina, but stopped because "it didn't feel like a grown woman's."

Johnson told ASA Guinn of another incident when C.D. agreed to do anything for her freedom.  This time, Johnson told ASA Guinn, he got down on his knees, like a dog, and licked C.D.'s vagina.  ASA Guinn testified Johnson began to cry after telling him this and then refused to speak anymore.

After hearing all of the evidence, the court found Johnson guilty on count one of the indictment.  Johnson was convicted of one count of aggravated criminal sexual assault and sentenced to six-and-one-half years imprisonment.

Now, on appeal, Johnson raises the following issues:  (1) whether C.D.'s out-of-court statements were properly admitted under section 115-10 of the Code, (2) whether the section 115-10 hearing held to determine the reliability of C.D.'s statements encompassed the statements admitted at trial, and (3) whether C.D.'s statements regarding uncharged conduct in Ohio were properly admitted at trial.

DECISION

   (1) 
Section 115-10 and child's age at trial

   First, the provisions of section 115-10 relevant to this case.

   Section 115-10 of the Code of Criminal Procedure, entitled "Certain hearsay exceptions," states, in relevant part:

"(a) In a prosecution for 
a physical or sexual act perpetrated upon or against a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:

(1) 
testimony by such child *** of an out of court statement made by such child *** that he or she complained of such act to another; and

(2) 
testimony of an out of court statement made by such child *** describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act perpetrated upon or against a child *** .

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement."

    C.D. did not testify.  A court determined she was unavailable and that decision is not challenged on appeal.  Her accusations against Johnson were presented to the trial court through Officer Richards, under paragraphs (a)(2) and (b)(2)(B) of section 115-10.  C.D. was under the age of 13 at the time of the alleged  sexual abuse 
and
 when she talked to Richards at the police station.

Our Supreme Court has held child outcry statements

are admissible under section 115-10(a)(2) only if the victim was under the age of 13 when the physical or sexual act occurred and when the outcry statement was made.  
People v. Holloway
, 177 Ill. 2d 1, 682 N.E.2d 59 (1997).  Here, the defendant, relying on 
Holloway
, asks us to find an additional age requirement in the statute -- that the child victim must be under the age of 13 at the time the hearsay statements are admitted at trial.

   The State contends the issue has been waived.  The defendant  did not make that specific objection at trial, nor did he raise it in his post-trial motion.

We note that the rule of waiver, or, more accurately, procedural default, limits parties, not courts, and reviewing courts may address the issue where justice requires.  
People v. Hoskins
, 101 Ill. 2d 209, 219, 461 N.E.2d 941 (1984).  We choose to address the defendant's contention because C.D.'s hearsay statements were indispensable to the State's case.

Holloway
 did not address the issue raised by Johnson.  In this appeal Johnson seizes on the court's statement that the legislature was concerned about "the ability of the victim to understand and articulate what happened during the incident and the reluctance many victims have relating the details of the incident at trial."  
Holloway
, 177 Ill. 2d at 9.  The importance of allowing the outcry hearsay, said the court, "***is dictated by the victim's ability to adequately testify to the alleged incident."  
Holloway
, 177 Ill. 2d at 10.

   Johnson contends, given the Supreme Court's statements in 
Holloway
, section 115-10 should be read to mean the phrase

"The child" in subsection (b)(2) of the statute is defined by the phrase "a child under the age of 13" in subsection (a).  The conclusion Johnson reaches is that the child must be under  the age of 13 when her statements are introduced at trial and C.D. was not.

We do not share Johnson's view of the Supreme Court's meaning in 
Holloway
 or of the General Assembly's intent in passing the statute.  The statutory ambiguity found by the court in 
Holloway
 related to the issue of the child's age at the time the outcry statement was made, not the child's age at trial. While the court referred to difficulties young children may have in testifying to details of an assault, the statement had to do with the legislative determination that the need for a specially-created hearsay exception in child assault cases does not outweigh traditional notions of confrontation when the declarant is 13 or more at the time the outcry is made.

We see no ambiguity in the statute concerning the age of the child victim at the time of trial.  The fact that C.D. was 13 at the time of trial does not effect the reliability of her outcry statements one way or the other.  Nothing in the statute indicates a legislative intent to add the restriction urged on us by Johnson.  When there is no ambiguity in the statute, we look no further than its plain words.  See 
Nottage v. Jeka
, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996). 

We have gone further, anyway.  We have examined transcripts of the legislative hearings held in regard to the enactment of section 115-10 in 1995 (see 89th Ill. Gen. Assem., House Bill 160, 1995 Sess.) and its predecessor (see 82d Gen. Assem.,

Senate Bill 1077, 1982 Sess.), and we find nothing to indicate the legislative bodies ever considered the child's age at time of trial.

The reading urged by Johnson would add nothing to the reliability of the hearsay, and, in fact, would invite 

grave mischief.  In cases where the child victim is approaching

13, delay of trial, inadvertent or not, justified or not, would  defeat admissibility.  The State, on the other hand, would race to the courthouse.  An offender could benefit by fleeing the jurisdiction before arrest, returning when the child reaches 13. Flight, then, would trump the statute, which, understandably, contains no provision for dealing with delay of trial. 

While our view of the statute applies to subsections (a)(1), when the child testifies at trial, and (a)(2), when the child does not testify, the defendant's argument falls by its own weight in this case, where the child did not testify.  We cannot see why the age of a non-testifying child at time of trial would have any relevance to the admissibility of the child's hearsay.

One of the cases the 
Holloway
 court relied on was 
People

v. E.Z.
, 262 Ill. App 3d 29, 633 N.E.2d 1022 (1994).  In that case the court reversed the defendant's conviction because the trial judge allowed the child victim and the child's mother to testify to outcry statements the child made when she was more than 13.

The case was remanded for a new trial, the court observing that

other outcry statements made when the child was under 13 could be admitted if found reliable under the provisions of section 115-10.  Since the child would have been more than 13 at the time of a second trial, the court was inferring, without holding, that the child's age at time of trial made no difference.

   To sum, we find no principled reason to hold that the victim's age at the time of trial has anything to do with admissibility of outcry hearsay under the provisions of section 115-10.

(2) 
C.D.'s statements and the section 115-10 reliability hearing

Johnson contends his Sixth Amendment right of confrontation was violated because the trial court never determined the reliability of the hearsay admitted at trial -- C.D.'s statements to Officer Richards at the 18th District police station.  He asks us to apply a 
de
 
novo
 standard of review to his contention.

    The State first responds the defendant never made that objection at trial, nor did he raise it in his post-trial motion.

The State's claim of waiver has merit, because the objections raised for the first time in this appeal are the kind that should be brought to the trial judge's attention for timely consideration.  However, because application of the statute implicates serious constitutional protections, we decline to find a procedural default and we will decide the issue.  See

People v. Hobley
, 159 Ill. 2d 272, 310, 637 N.E.2d 992 (1994).

There are two sets of hearsay statements in this case.  The  first took place at the apartment building on North Burling Street at about 2 p.m. on October 20, 1995.  C.D. had run away from home.  Johnson was looking for her.  He called the police to report his daughter missing.  When Johnson tried to find her, she hid behind some friends.  Reluctantly, at the urging of her friends, C.D. informed Officer McMurdo of the sexual abuse by Johnson she had been enduring for the past several months.

The second statement by C.D., to Officers McMurdo and Richards, took place about four hours later, at the 18th District police station.  During those four hours, C.D. had been taken to the hospital, examined, and released.  There is no testimony concerning anything that might have been said to her during those four hours.

The two statements were almost identical.  There is no evidence of manipulation or intervention by any adult.  Nor is there any indication C.D. suffered from a faulty memory.  Once she began speaking, she showed no reluctance.  Her statement was specific, not vague or faltering.  She made no prior or subsequent inconsistent statements.  She was old enough to understand and relate the events she described.

A problem is created because C.D.'s statement to McMurdo at the North Burling Street building was the subject of the section 115-10 reliability hearing, while C.D.'s statement to McMurdo and Richards at the police station was the hearsay introduced at trial.  McMurdo did not testify at the trial.  The judge who presided at the section 115-10 hearing was not the trial judge.

The abuse of discretion standard is used to review admissibility of outcry hearsay under section 115-10.  
People  v. Zwart
, 151 Ill. 2d 37, 44, 600 N.E.2d 1169 (1992).  We use that standard.  Here, the hearing judge examined the circumstances surrounding C.D.'s statement to McMurdo at North Burling Street, concluding the State carried its burden of proving that the "time, content, and circumstances" of C.D.'s statement provided sufficient safeguards of reliability to satisfy the statute.  Although this statutory hearsay exception is not firmly rooted in the law, the statute and the Sixth Amendment will be satisfied when the totality of circumstances surrounding the making of the statement provides a particularized guarantee of trustworthiness.  
Idaho v. Wright
, 497 U.S. 805, 820-21, 111 L. Ed. 2d 638, 655-56, 110 S. Ct. 3139, 3149-50 (1990); 
People v. Zwart
, 151 Ill. 2d at 43.

After reviewing the record in this case, we cannot say the hearing court abused its discretion when it found C.D.'s statement to McMurdo at North Burling Street satisfied the statute.

That, of course, does not answer the question raised by the defendant.  Was it reversible error to qualify one statement under section 115-10 and use another statement at trial?  We do not think it was.  The statements were substantially the same, within hours of each other, without any intervening circumstances

that would taint the second statement.  Reliability was unchanged.  In fact, it was enhanced by similarity.

While a technical error may have been committed, we cannot see how, in this bench trial, it caused any prejudice to the defendant.  See 
People v. Burnett
, 239 Ill. App. 3d 582, 607 N.E.2d 317 (1993); 
People v.Roy
, 201 Ill. App. 3d 166, 558 N.E.2d 1208 (1990).  In 
People v. Mitchell
, 155 Ill. 2d 344, 614 N.E.2d 1213 (1993), relied on by the defendant for his claim of reversible error, there never was a hearing on the reliability of the outcry hearsay.  We see no abuse of discretion in this case.

   (3) 
Hearsay concerning uncharged conduct

       This final issue concerns the admission of C.D.'s

statements to Richards about Johnson's conduct in Ohio, during  October 1995.  She told Richards the defendant licked her vagina and then attempted to have sexual intercourse with her.  She said she forced him away by biting him on the arm and chest and by scratching him. 

A photograph of the bite and scratch marks was introduced  at trial.  Johnson and one of his witnesses testified C.D. bit  and scratched him when he tried to stop her from leaving the  house.  While Richards testified the defendant told him he "grinded on" C.D. when they were in Ohio, the officer does not  quote the defendant as having said anything about bite and scratch marks being caused by a sexual attack.  Neither does ASA Guinn.  The only connection between a sexual attack in Ohio and the bite and scratch marks is contained in C.D.'s statements to Richards at the 18th District.      

The State concedes Johnson could not be and was not charged with the Ohio conduct.  It contends, however, the Ohio sexual attack evidence was properly admitted as corroborative evidence of C.D.'s actions and her credibility.

      The defendant does not dispute the well-established principle that evidence of a defendant's prior sexual activity with the same child is admissible to prove a course of conduct and to corroborate the victim's testimony.  
People v. Jahn
, 246

Ill. App. 3d 689, 705, 615 N.E.2d 1270 (1993).  He does dispute

the way in which the other crimes evidence was admitted -- through section 115-10(a)(2).

Here, again, defense counsel at trial did not make the specific hearsay objection now being raised on appeal.  But his hearsay objection to all of Richards' testimony had been overruled, and when Richards testified to C.D.'s statement about events in Ohio, defense counsel made a timely objection and motion to strike, saying: "It goes beyond the scope of jurisdiction.  She's trying to testify to something that didn't even happen in Cook County."

We believe the objection was close enough to raise the issue.  Even if it weren't, the interests at stake in this close case justify our consideration of the issue under the plain error rule.  
People v. Mitchell
, 155 Ill. 2d 344, 614 N.E.2d 1213 (1993); 
People v. E.Z.
, 262 Ill. App. 3d 29, 33, 633 N.E.2d 1022 (1994).

    C.D.'s statements to Richards were introduced for their  truth.  They are hearsay.  They would have no relevance if offered for any purpose other than their truth.  The State treated them as truthful accusations at trial and the trial judge considered them for their truth.  See 
People v. E.Z.
, 262 Ill. App. 3d at 34.  It is too late for the State to say, as it did during oral argument, that the evidence had a non-hearsay purpose.

The question is whether section 115-10(a)(2) permits admission of hearsay concerning uncharged conduct when the declarant does not testify.  We conclude it does not.

    Section 115-10(a)(2) provides that testimony about the child's out of court statement must describe a complaint of an "act or matter or detail pertaining to any act 
which is an element of an offense which is the subject of a prosecution
 for a sexual or physical act perpetrated upon or against a child***." (Emphasis added.)  725 ILCS 5/115-10(a)(2) (1996). 

Clearly, events in Ohio were not part of the elements of  the offenses charged in Illinois.  The prosecutor said so when  she offered the testimony: 

"Your Honor, this is not an allegation that we have charged within this document.  It's only offered to show the corroboration for what actually did happen within this jurisdiction."

With that understanding, the trial judge admitted the testimony over objection.

    Two appellate decisions support our conclusion that the hearsay evidence concerning uncharged conduct was not authorized by section 115-10(a)(2).  No other hearsay exception is proposed by the State; none could apply.

     In 
People v. Kinnett
, 287 Ill. App 3d 709, 679 N.E.2d 481  (1997), the court affirmed a trial judge's pretrial ruling excluding a child's section 115-10 hearsay concerning the defendant's uncharged sexual conduct.  There, the uncharged conduct evidence was deemed relevant, but was barred by the  hearsay rule.  The court held section 115-10 did not extend to  conduct occurring at times and places not contained in the charging document.  In the instant case, the Ohio conduct related by C.D. occurred in October.  The charged conduct occurred during the first two weeks of September, in Chicago.

   
Kinnett
 relied on 
People v. Anderson
, 225 Ill. App. 3d 636, 587 N.E.2d 1050 (1992).  There, the court held hearsay evidence of uncharged sexual conduct should not have been admitted at the defendant's sexual abuse trial:

"While section 115-10 creates an exception to the hearsay rule, it does not abrogate the rule nor remove its effect other than in the area of the exception.  The plain language of the statute limits the exception to complaints of, or details about, sexual acts which are the subject of a prosecution."  
Anderson
, 225 Ill. App. 3d at 650-51.

Erroneous admission of the hearsay was harmless error in 
Anderson
 because the child victim testified to the uncharged events and was available for cross-examination.

      We agree with the reasoning of 
Kinnett
 and 
Anderson
.  Those cases, and ours, are distinguishable from 
People v. Rushing
, 192 Ill. App. 3d 444, 548 N.E.2d 788 (1989)(hearsay testimony that defendant threatened to kill victim's family if she told of sexual assault was admissible where spoken contemporaneously with the sexual acts); 
People v. Edwards
, 224 Ill. App. 3d 1017, 586 N.E.2d 1326 (1992)(evidence of other forms of penetration occurring at same time as charged conduct was mere surplusage); and 
People v. Schmitt
, 204 Ill. App. 3d 820, 562 N.E.2d 377 (1990)(objection to uncharged conduct statements waived, no  plain error to admit evidence of uncharged conduct that may have taken place at same time and place as charged conduct).

     We believe section 115-10(a)(2), which by legislative fiat creates a previously non-existent hearsay exception, must be strictly construed where the defendant has no opportunity to confront and cross-examine his accuser.  See 
People v. Bridgewater
, 259 Ill. App. 3d 344, 349, 631 N.E.2d 779 (1994)("In light of the principles surrounding the admission of a statement as an exception to the hearsay rule, section 115-10 of the Code should be narrowly construed.").

We believe the legislature understood the inherent danger  to cherished principles of confrontation when unexamined hearsay is allowed in a criminal trial.  Confining the outcry hearsay to acts which are an element of the offense charged was a considered judgment, created from a perceived necessity in a narrow class of cases.  If the legislature intended any broader application of the hearsay exception, beyond the elements of the offense charged, it could easily have said so.  Other hearsay exceptions in the Code do not contain similar limitations.  See 725 ILCS  5/115-10.1 and 5/115-10.2.  We have no desire to broaden the terms of the statute by judicial fiat, lest the exception swallow a rule that has served so well for so long.

Finally, all else failing, the State urges us to find admission of the hearsay about the Ohio events was harmless error.  We do not believe it was.

     The trial record tells us C.D.'s statement to Richards about biting and scratching Johnson during an Ohio sexual attack played a crucial role in this trial.  Neither Richards nor Guinn testified the defendant admitted receiving the scratch and bite marks in the process of "grinding on" C.D. in Ohio.  On the other hand, Johnson and his witness, Corleatha Thompson, testified C.D. bit and scratched Johnson when he tried to stop her from running away.  Without C.D.'s hearsay, the defense testimony concerning bites and scratches would be uncontradicted.

The trial judge rejected the defense version of how the bites and scratches were received.  Referring to C.D.'s hearsay account of the Ohio assault, the judge said:

"This is corroborative of [C.D.'s] testimony as well as the testimony of the officers as to what the defendant said."

Since C.D.'s outcry hearsay and Richards' and Guinn's accounts of Johnson's oral statements were just about the State's entire case, we cannot see how the erroneous admission of the uncharged conduct hearsay could be characterized as harmless.

Given the testimony in this bench trial, we cannot say "the properly admitted evidence was so overwhelming, without the erroneously admitted hearsay statements, that no fair-minded trier of fact could reasonably have acquitted the defendant."

People v. Bridgewater
, 259 Ill. App. 3d at 349.  Admission and use of C.D.'s hearsay concerning uncharged conduct was reversible error.

    We are not making a finding as to Johnson's guilt or innocence.  Retrial of Johnson, without the inadmissible uncharged conduct hearsay, would not constitute double jeopardy.

                          
CONCLUSION

  Because inadmissible hearsay evidence of uncharged conduct was admitted and relied on by the trial judge, we reverse the 

defendant's conviction and remand this cause for a new trial.

REVERSED AND REMANDED.

CERDA, P.J. and McNAMARA, J., concur.