THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM L. RUSHING, Defendant-Appellant.

Fourth District   No. 4—88—0830

Opinion filed December 21, 1989.

Daniel D. Yuhas and Gloria A. Carroll, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

Defendant William L. Rushing was charged by information with one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14) and two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1987, ch. 38, par. 12—16(c)(1)). The offenses allegedly occurred on or about the summer of 1986 against a minor complaining witness, D.B. The single count of aggravated criminal sexual assault alleged defendant committed an act of sexual penetration with D.B. by placing his finger in her vagina. The charges of aggravated criminal sexual abuse alleged defendant committed acts of sexual conduct with D.B. by touching her vaginal area with his finger and by having D.B. touch his penis with her hands. On September 16, 1988, following a jury trial in Champaign County, defendant was con-

victed of the two counts of aggravated criminal sexual abuse. Defendant was sentenced to four years' imprisonment on each count, to be served concurrently. Defendant appeals his convictions, alleging the trial court erred in admitting hearsay testimony and in allowing the prosecutor's closing argument. We affirm.

Prior to trial, the prosecutor filed notice of its intent to present evidence pursuant to section 115–10 of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 115–10). The notice informed defendant of the State's intent to offer out-of-court statements of D.B. made to Pam Roberts, Detective Michael Parker, and Dr. Mary Kathleen Buetow. At a pretrial hearing held pursuant to section 115–10(b)(1) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115–10(b)(1)), the court heard testimony from D.B., Roberts, and Parker. D.B. testified she told "Pam," a doctor, and a policeman what happened to her. Roberts and Parker recounted D.B.'s allegations, and the court examined the report of Dr. Buetow. Over defendant's objection, the trial court permitted admission of the out-of-court statements.

At trial, D.B. testified she was nine years old and met defendant through the Caravan program at the Nazarene Church. Defendant was a teacher and drove the Caravan group to activities. D.B. spent the night twice at defendant's home, once with her sister and once by herself. On the night she spent alone at defendant's residence, D.B. went to bed wearing a T-shirt and underpants. She claimed defendant came into the room she was sleeping in, sat on the corner of the bed, and rubbed his "private part" on her leg and arm. Yellow and white "goop" got on her arm when he touched it with his "private part." Defendant had D.B. hold his "private" in her hands. He left the room when they heard his wife drive up.

Dr. Buetow, a pediatrician, testified she examined D.B. on June 20, 1988. As part of the examination, D.B. told her that about a year ago she went to the home of a man from her church, Bill Rushing. He took her into a bedroom of his home where he took the "thing between his legs" and rubbed it on her arms, legs, and thighs. "White, yellow sticky stuff" came out onto her arms. D.B. told Dr. Buetow defendant pulled up her shirt and pulled down her underpants. He put his finger in her private part and left it there for one or two minutes. He stopped when his wife came home. Over defense objection, Dr. Buetow testified D.B. said defendant told her not to tell anyone. Defendant stated if she did tell he would go to jail and when he got out he would kill her mother and father.

Ms. Taylor, D.B.'s mother, testified she enrolled her children in

the Caravan program approximately 2½ years ago. Defendant was a teacher and bus driver there. Approximately two years before trial, D.B. spent the night with defendant on two occasions. Her sister accompanied her on one of the stays.

Michael Parker, a detective with the Champaign police department, testified he interviewed D.B. on May 27, 1988. He testified D.B. told him the incident occurred at defendant's home when only she and defendant were there. The incident happened a long time ago. Defendant removed her underwear and played with her private parts. She stated defendant put his finger "inside where she pees." She stated defendant rubbed his "private part" on her cheeks and had her touch his "private part." "Yellow and white goop" came out. She also stated defendant told her not to tell anyone. Defendant stated if she did, he would go to jail and when he got out he would kill her mother and father.

Pam Roberts, a neighbor of D.B., testified that on May 26, 1988, D.B. was playing with her daughter. The girls began to argue, and Roberts went outside to see what was going on. D.B. was upset with Roberts' daughter and also upset with "Bill." D.B. said nobody was her friend. D.B. said she was afraid because defendant told her he would kill her mother, father, brother, sister, and hurt her. D.B. said the incident occurred when she spent the night at defendant's home after a cookout. D.B. put her hand near her groin area and said defendant touched her under her pajamas. D.B. also said defendant rubbed "it" on her body and that "white, yellowish stuff" got on her skin.

In his work with the Church of the Nazarene, defendant testified he taught Sunday school, helped in the Caravan program and with junior church, was an outreach director, and sat on the church board. Defendant testified D.B. and her sister did on one occasion sleep over at his home. On this occasion, D.B. came into his bedroom when his wife was not home and woke him up. He put his arm around her and talked to her for a short time. He then told her to go back to her room as she could not stay with him. Defendant could not remember D.B. ever having stayed at his home alone. Defendant testified on May 22 or 23, 1988, he was at church in the back of a large room with his group. D.B. was supposed to be in the front of the room with her group. D.B. kept coming back to defendant wanting to sit with him. He told her to sit with her own group. D.B. became upset and pinched defendant. Several days later the police informed him of D.B.'s accusations.

The jury convicted defendant for the act of touching the vaginal

area of D.B. and for having D.B. touch his penis with her hands. Defendant was not convicted of the charge which alleged penetration. At trial, D.B. testified to the act of touching defendant's penis. Regarding the other allegations, D.B.'s testimony was defendant had touched her somewhere else and she had told the doctor what defendant did with his fingers. Additional details of the allegations were presented to the jury by Dr. Buetow, Parker, and Roberts. Their testimony recited what D.B. had told them regarding the incident.

■■ ■ Defendant alleges the trial court erred in admitting the out-of-court statements. Testimony by a witness as to something told to the witness by another is hearsay if the testimony is offered to proved the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) According to defendant, the testimony of Dr. Buetow, Parker, and Roberts as to what D.B. told them defendant did was hearsay as it was offered to prove the truth of these matters. Generally, hearsay testimony is not admissible though exceptions to this rule are made. Here, the trial court granted admission of the out-of-court statements pursuant to the hearsay exception for sexual acts on a child under the age of 13. Ill. Rev. Stat. 1987, ch. 38, par. 115—10.

Defendant contends the purpose of section 115—10 is only to provide corroboration a complaint was made. Any details beyond those necessary to corroborate are impermissible. (*People v. Bradley* (1988), 172 Ill. App. 3d 545, 526 N.E.2d 916; *People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.) The cases cited by defendant interpreted section 115—10 of the Code as enacted January 1, 1983, and as subsequently amended effective July 1, 1984. The statute stated:

> "In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:
>
> (1) testimony by such child that he or she complained of such act to another; and
>
> (2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.)

After the cases cited by defendant, section 115—10 was again amended. Effective January 1, 1988, section 115—10 of the Code now states:

> "(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecu-

tions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10.)

The parties are in agreement that the admissibility of evidence of corroborative complaints by D.B. is governed by the amended section 115—10. However, the parties are in dispute as to the interpretation of section 115—10.

This court recently interpreted the amended section 115—10 in *People v. Morton* (1989), 188 Ill. App. 3d 95, 543 N.E.2d 1366. At issue was the admissibility of statements made by minor J.M. to a DCFS investigator and a deputy sheriff in a trial for aggravated sexual assault. The statements were detailed accounts of sexual acts performed upon J.M. by the defendant. This court held section 115—10 permits hearsay testimony concerning details of sexual acts reportedly perpetrated upon minor victims beyond the mere fact a com-

plaint was made. The same interpretation was made by the Third District Appellate Court in *People v. Kelly* (1989), 185 Ill. App. 3d 43, 540 N.E.2d 1125.

■■ ■ The failure of D.B. to testify at trial to specific details regarding the touching of her vaginal area or to defendant's threat does not distinguish this case. Section 115—10 does not require every detail recited be corroborated by the child's testimony at trial. (*Morton*, 188 Ill. App. 3d at 102, 543 N.E.2d at 1371.) The purpose of the amended statute was to expand the previous hearsay exception permitting the content of out-of-court statements made by child victims to be admitted. (85th Ill. Gen. Assem., Senate Proceedings, June 26, 1987, at 227.) The amended statute provides for safeguards of reliability prior to admission of an out-of-court statement. (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(b)(1).) None of these safeguards require the child's trial testimony be a complete replication of the out-of-court statement. Had the legislature intended to make such a requirement, it would have been listed among with the other required safeguards. The jury could properly find defendant touched D.B.'s vaginal area on the basis of all the evidence.

■ Moreover, the trial court did not err in admitting into evidence out-of-court statements of the threat made by defendant. D.B.'s testimony at trial regarding the threat was as follows:

"Q. [By prosecutor:] And, did he say anything to you about telling anyone?

A. [By D.B.:] Yes.

Q. And, what did he say? Did he say anything at all about it if you told? Is there some reason why you can't tell us, ***?

MR. SILVERMAN: Objection, judge.

THE COURT: Objection is overruled, Mr. Silverman.

Q. Is there some reason why you don't want to tell us, ***?

A. (Witness nods head up and down)

Q. And, why is that? Did he say anything about your mother or father?

A. Yes.

Q. And, what did he say? It's okay to tell us. What did he say about your mother or father? Do you think you can answer that question?

A. (Witness nods back and forth)

MRS. LADD: May the record reflect the witness shaking her head no. Would you feel better if I asked that question in a few minutes?

A. No.

MR. SILVERMAN: I didn't hear the answer.

THE COURT: No."

Dr. Buetow, Parker, and Roberts testified D.B. told them defendant threatened to kill her family if she told anyone what he did to her. Section 115—10(a)(2) provides for admission of an out-of-court statement "describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution." Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)(2).

■■ D.B.'s out-of-court statements regarding the threat are admissible as a detail pertaining to the offense and as a description of the complaint. Defendant was charged with aggravated criminal assault and aggravated criminal sexual abuse. While the threat was not a statutory element of the offenses, it is admissible under the amended section 115—10. The threat was spoken contemporaneously with the sexual acts. Defendant made the threat while lying in bed with D.B. The threat was not a separate matter but a detail of the acts. Furthermore, these statements describe the complaint of the acts.

Defendant has challenged the credibility of D.B.'s complaint. Defendant contends D.B. concocted the allegations in retaliation for a reprimand two or three days earlier by defendant. Introduction of the out-of-court statements clarifies the nearly two-year gap between occurrence and reporting which defendant suggests as evidence of fabrication. Due to the contemporaneous nature of the threat with the acts and the challenges made to D.B.'s credibility, the threat has become integrally intertwined with the offense. Under these circumstances, D.B.'s out-of-court statements regarding the threat are admissible.

■■ Regarding introduction of both the details of the acts and the threat, defendant was not denied the right of confrontation. D.B. did testify regarding these allegations. She was subject to cross-examination and could have been confronted with the prior statements. No confrontation problem arises from admission of her out-of-court statements. (See *California v. Green* (1970), 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930.) The trial court did not err in its admission of these out-of-court statements.

■■ Defendant further contends the testimony of Dr. Buetow was in violation of section 115—13 of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—13) as the details related were not relevant to diagnosis and treatment and Dr. Buetow was an examining physician and not a treating physician. Section 115—13, effective January 1, 1988, provides:

"In a prosecution for violation of Section 12—13, 12—14, 12—15 or 12—16 of the 'Criminal Code of 1961', statements made

by the victim to medical personnel for purposes of medical diagnosis or treatment including descriptions of the cause of symptom, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admitted as an exception to the hearsay rule." Ill. Rev. Stat. 1987, ch. 38, par. 115—13.

■ Defendant's interpretation of section 115—13 is incorrect. The interpretations which defendant cites are common law rules and not interpretations of the statute. Section 115—13 does not provide for a distinction between examining physicians and treating physicians. Instead, it provides that statements of sexual assault victims to medical personnel for purposes of "diagnosis or treatment" shall be admitted. The reference to diagnosis or treatment evinces a legislative intent to apply this provision broadly and not to limit the testimony only to treating physicians.

■ D.B.'s report of the acts and threat to Dr. Buetow was reasonably pertinent to diagnosis or treatment. D.B. was examined by Dr. Buetow approximately one month after reporting the incident and nearly two years after its occurrence. D.B.'s mother took her to see a physician after D.B. reported a vaginal discharge, which D.B. described as being similar to the "goop" from defendant's "private part." In examining and treating such complaints of a nine-year-old girl suspected of sexual abuse, details of the sexual acts were certainly pertinent. Under the same circumstances, the threat was relevant to D.B.'s state of mind and emotional condition. All the statements were relevant in determining the approximate time of the alleged act and to the credibility of D.B. These are all matters which would reasonably be considered and relied upon by medical personnel in making any diagnosis or conclusion as to a patient's condition and proper course of treatment. Thus, the statements were also admissible under section 115—13.

Last, defendant contends he was deprived of a fair trial when the prosecutor, in the course of closing argument, referred to characteristics of child molesters. No evidence on this subject had been introduced at trial. Defendant contends such argument was highly prejudicial and constituted unsworn testimony of the prosecutor.

The disputed portions of prosecutor's closing argument and the objection to it are as follows:

"[By the prosecutor:] Reasonable doubt. Not any doubt, or all doubt. Is the evidence reasonable. Does it raise a reasonable doubt in your mind, and ask yourself this when you are talking

about reputation evidence. What would a child molester look like. Would a child molester walk around and have horns, did he have child molester stamped on his forehead. Is it someone that you are going to know when he walks down the street. He is going to look like anybody that we encounter. He [*sic*] will be in a position where they work with children, where they have access to children, maybe troubled children or children who come from troubled homes like D.B. did, children that they could win their trust. They are going to be sterling citizens, fine reputations. The reputations are going to be above reproach.

[By defense counsel:] There is no evidence about molesters, and what the reputation might be.

[By the Court:] Ladies and gentlemen, this is true that there is no evidence on this point. I think this is, however, within the realm of appropriate arguments on the subject of reputation, and it's to be taken by you as counsel's assessment of reputation evidence with regard to people charged with this offense. You may continue.

[Prosecutor:] It's not so unusual that Mr. Rushing would have a good reputation, at least until he was caught. This is a very difficult case. Every one of these cases where you have a child and an upstanding member of the community you have a difficult decision to make, and it's very troubling, and you have to go back in that jury room, and say that this man who has a good reputation and has all of these people in the church behind me, would do such a thing."

■■■■ Prosecutors are allowed great latitude in closing arguments. To determine whether error exists, each case must be decided on its own facts. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880.) Arguments and statements based upon facts in evidence or upon legitimate inferences from such evidence are not outside the bounds of proper argument. (*People v. Oliger* (1975), 32 Ill. App. 3d 889, 336 N.E.2d 769.) The substance and style of closing arguments are within the discretion of the trial court and its finding will not be disturbed absent extreme error. (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 428 N.E.2d 1087.) Moreover, improper prosecutorial remarks can be cured by instruction to the jury to disregard argument not based on the evidence and to consider instead only the evidence presented. *People v. Thomas* (1988), 172 Ill. App. 3d 172, 526 N.E.2d 467.

■■ In this case, the jury was presented with testimony from a

number of defendant's friends and associates stating the defendant had a good reputation for morality and truthfulness. The prosecutor could properly refer to this evidence and try to convince the jury the defendant was guilty beyond a reasonable doubt despite his reputation. The prosecutor's argument was not testimony but instead an attempt to appeal to the jury's common sense and experience by informing them child molesters were no different in appearance than anyone else and could indeed have good reputations. The prosecutor did not state these characteristics or traits were proven by studies, prior cases, or authorities. Nor did the prosecutor state defendant had exhibited the traits or characteristics commonly associated with child molesters.

At the time the remarks were made, the court admonished the jury there was no evidence before them of the characteristics, traits, or reputation of child molesters and the prosecutor's argument should be taken only as his assessment of reputation evidence with regard to people charged with the offense. The jury was instructed it should decide the case based solely on the testimony of the witnesses and that any argument not based on the evidence should be disregarded. In this context and considering the sufficiency of the other evidence, the prosecution's argument did not constitute reversible error.

Affirmed.

LUND and GREEN, JJ., concur.