THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD E. BEARD, JR., Defendant-Appellant.

Fourth District   No. 4—03—0910

Opinion filed March 16, 2005.

COOK, P.J., dissenting.

Daniel D. Yuhas and Nancy L. Vincent, both of State Appellate Defender's Office, of Springfield, for appellant.

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

After a May 2003 jury trial defendant, Donald E. Beard, Jr., was convicted of one count of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(2) (West 2002)), and in September 2003, the trial court sentenced him to a 20-year prison term. He appeals, arguing (1) the prosecutor argued facts not in evidence in closing argument, (2) the trial court erred in denying his motion for new trial based on newly discovered evidence, and (3) he received ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Defendant was charged by indictment with two counts of criminal

sexual assault, one count of aggravated criminal sexual assault, one count of aggravated unlawful restraint, one count of domestic battery—subsequent offense, and six counts of aggravated criminal sexual assault; all stemming from events occurring between November 15 and 17, 2002, during which defendant allegedly held his estranged wife, Heather, in their former marital residence for the weekend and repeatedly sexually assaulted her. On the date of trial, the State dismissed four of the counts and proceeded to trial on the six counts of aggravated criminal sexual assault and the one count of aggravated unlawful restraint.

The trial commenced on May 19, 2003. Heather testified she and defendant were still married during the fall of 2002 but she moved out of the marital home on September 19, 2002. Defendant remained living there. On October 29, 2002, she obtained an emergency order of protection against defendant. On Friday, November 15, 2002, as she was leaving a coffeehouse to meet her mother, she encountered defendant. She walked past him, but he caught up with her, twisted her arm behind her back, and led her to his apartment.

According to Heather, when they arrived at the apartment, defendant started punching her in the face. He then took her to the bedroom and sexually assaulted her both vaginally and anally. This lasted about a half hour, during which time defendant held a knife to her throat. Defendant told her she would not make it out of the apartment alive.

Heather then went to the bathroom, where defendant followed her and forced her to perform oral sex. When she vomited, defendant ripped out her tongue ring and punched her until she blacked out. When she awakened, defendant was on top of her having vaginal intercourse. When he was finished, defendant tied her right arm to his left arm and her right leg to his left leg with strips torn from a pillowcase and then slept. Heather stated she was unable to free herself because her movements would wake him.

The following morning, defendant untied her and allowed her to use the bathroom. She remained untied the entire day, and they had vaginal, oral, and anal sex. Defendant "made sure that [Heather] knew there was a knife next to him on the floor." He again threatened her with her life if she attempted to leave. He did not tie her to him on Saturday night but slept partly on top of her so he would awaken if she moved. She was by a window but could not get out because the window had wooden bars.

Sunday morning began with additional vaginal and anal intercourse, with defendant "continually [making] sure [Heather] knew the knife was close enough to him that if [she] tried to leave that it

was within his grabbing reach." Sunday night he again slept partially on top of her, preventing her from leaving. On Monday afternoon, the police came to the apartment, and defendant held Heather in the bathroom with his hand over her mouth, preventing her from making a sound or leaving. She stated from Friday night to Monday, defendant never left the apartment. Heather eventually convinced defendant the police would return, and he let her go.

Heather went to a nearby cab company where the police were called. She refused to go to the hospital by ambulance but later went with her roommate, Jenny Moss. Heather talked to the police and let them photograph her.

Dr. Eric Wernsman testified he examined Heather at the hospital and found bruising to her labia, usually a sign of force, although it could also be consistent with "extremely vigorous" consensual sex. He found no rectal tears, which he would ordinarily have expected to find given Heather's report of anal sexual assault. Her other injuries included multiple contusions; bruising about her eyes, throat, back, and shoulder; and scratches. Dr. Wernsman also testified that a bone in her throat was possibly fractured and this bone was tough to fracture without placing it under a fair amount of pressure so it had to be squeezed very hard for the injury to occur.

A cab company employee testified Heather came into her office on November 18, 2002, beaten and appearing "terrified." She hid behind a door and stated she was running from her husband or boyfriend. The cab employee called the police.

Moss, Heather's former roommate, testified she accompanied Heather to the hospital on the evening of November 18, 2002, and then took her to the police station. Heather appeared to have been beaten and was very tired.

A Bloomington police officer testified he went to defendant's apartment in response to a report late on November 18 or early on November 19, 2002. He "peered" into the windows and noted no bars on them.

Jesse Mason, an acquaintance of defendant, testified he stopped by defendant's apartment on a Friday night in November at about 8 p.m. to see if defendant wanted to go out. Defendant refused, stating he was waiting for someone.

An extensive videotape of a statement given by defendant on November 19, 2002, was entered into evidence. Defendant told the police he and Heather met at a coffeehouse on Friday, November 15, 2002, but he was uncomfortable being with her because of the order of protection. Heather told him she was afraid of her roommate, Moss, based on a previous incident between them where Heather was beaten

up by Moss. Defendant and Heather then split up after defendant told her she was welcome to stay with him anytime.

Heather then appeared at his door that same night about midnight, beaten up. Heather stated she did not want to go back to Moss, and defendant did not turn her away. They stayed together the whole weekend. At her request, he called Heather's employer on Monday to report her absence from work. (A police officer verified this in his testimony.) During the course of the weekend, defendant and Heather had sex several times. Defendant stated Heather liked "wild sex," which he described as "intense." He stated Heather liked to be "spanked" and have her hair pulled during sex. Defendant stated he left the apartment several times over the weekend to get food, beer, or cigarettes and also took out the garbage.

Based on this evidence, the jury convicted defendant on one count of aggravated criminal sexual assault and acquitted him of all other charges.

On May 27, 2003, defendant filed a *pro se* "Motion to Quas [*sic*] Post-Conviction Motion to Dismiss or Motion for New Trial." On June 3, he filed *pro se* a "Motion to Dismiss Due to Perjury [*sic*] Testimoney [*sic*]."

On June 14, 2003, Heather visited defendant in the McLean County jail, signing herself in as "Brandi Gordon." On June 16, 2003, defendant sent a letter to the trial court stating Heather told him during her visit she was forced to testify against him due to the "current DCFS [Illinois Department of Children and Family Services] case" and that she lied. On June 30, 2003, defense counsel filed an amended motion for new trial. Several other letters and other correspondence titled as "motion" were sent to the court by defendant. On July 25, 2003, defense counsel filed a second, amended motion for new trial in which he adopted defendant's assertions his conviction was the result of Heather's perjured testimony. The motions for new trial were set for hearing on August 7, 2003.

On August 5, 2003, defense counsel filed a motion to withdraw, contending defendant had filed a lawsuit against him in federal court alleging violations of his civil rights concerning counsel's representation of him. Counsel alleged a conflict of interest.

At the hearing on the motion for new trial on August 7, the trial court did not allow counsel to withdraw. However, defendant decided to represent himself *pro se*. A McLean County correctional officer identified Heather as the person who visited defendant and claimed to be "Brandi Gordon." The State's hearsay objections to defendant testifying to what Heather told him were sustained. Jafaria Newton testified he was an inmate in the visitor's room at the jail at the same

time as defendant and Heather. He told his visitor Heather was the person who got defendant convicted and she was there to apologize. An unsworn written statement from Newton was admitted over the State's objection, which stated Heather told defendant "someone told her to say what she said or she wouldn't get her children back." An unsworn statement from Juan Villareal was also admitted over the State's objection. He was another inmate present in the visitor's room at the jail on the date in question. He reported he heard Heather say "something like she was pressure [*sic*] to testified [*sic*] against him so that she could get her children back." Heather did not testify, nor was there any written statement—sworn or not—from her.

In September 2003, the trial court denied defendant's various motions for a new trial and sentenced him to 20 years in prison. This appeal followed.

## II. ANALYSIS

### A. Prosecutor's Closing Argument

■ Defendant contends the prosecutor improperly argued in closing that Jenny Moss was tall but not "terribly strong-looking" and "simply would not have the strength to have caused" Heather's injuries. The prosecutor repeated the argument, telling the jury Heather's bruises "are not consistent with a person the size and stature of Jenny Moss causing those injuries." Defendant contends these "facts" were not in evidence and allowing the jury to hear them was error.

First, we note defendant has forfeited this argument because he made no objections to the allegedly improper remarks during argument (see *People v. Kidd*, 175 Ill. 2d 1, 38, 675 N.E.2d 910, 928 (1996)), nor did he preserve the claim in any of his posttrial motions (see *People v. Garza*, 276 Ill. App. 3d 659, 669, 658 N.E.2d 1355, 1362 (1995)). Thus, he may not object to them for the first time on appeal.

Defendant acknowledges no objection was made during closing argument and he did not include this issue in any posttrial motion. However, he contends the propriety of the prosecutor's remarks may still be considered by this court under the plain-error doctrine. Plain error may be found "where the evidence is closely balanced, or where the error adversely affected the defendant's right to a fair trial," and such errors may be considered on appeal. *People v. Mullen*, 141 Ill. 2d 394, 401-02, 566 N.E.2d 222, 226 (1990). Defendant contends the evidence of whether he caused bodily harm was closely balanced, as it was a "swearing contest" between himself and Heather and the jury was not impressed with Heather's story because it acquitted him of all but one count. Therefore, he contends the evidence is closely balanced

and this court should consider his argument concerning the prosecutor's remarks.

We find no plain error here. Heather's testimony is corroborated by the physical evidence concerning her injuries and by her reports of the offense to the cab company employee, Dr. Wernsman, and the police shortly after the offense. Thus, the evidence is not closely balanced.

On the merits, we note a prosecutor is given wide latitude in argument and may comment on the facts and legitimate inferences that may be drawn therefrom. *People v. Enis*, 163 Ill. 2d 367, 407, 645 N.E.2d 856, 874 (1994). In addition, a prosecutor is permitted to discuss subjects of general knowledge, common experience, or common sense in closing argument. See *People v. Rushing*, 192 Ill. App. 3d 444, 455, 548 N.E.2d 788, 794-95 (1989). Reversal is not required based on a prosecutor's remarks unless they constituted a material factor in the conviction such that a different verdict would have been reached absent the remarks. *People v. Byron*, 164 Ill. 2d 279, 295, 647 N.E.2d 946, 954 (1995).

In this case, the jury saw Moss when she testified; therefore, it was familiar with her appearance. Based on their everyday experience, the jurors could make a determination as to her perceived strength, size, or capability to inflict the injuries suffered by Heather. No expert testimony was needed to make this assessment. The prosecutor's argument simply called upon the jury to use its common sense and experience in judging the apparent strength of an individual in assessing the credibility of defendant's claim that Moss was the one who beat, strangled, and injured Heather. We find no error in this argument.

## B. Motion for New Trial

■ To warrant a new trial, newly discovered evidence must (1) be so conclusive it would likely change the outcome of the trial, (2) be material and not merely cumulative, and (3) have been discovered after trial and could not have been discovered sooner. *People v. Molstad*, 101 Ill. 2d 128, 134, 461 N.E.2d 398, 402 (1984). However, recantations are regarded as inherently unreliable, and a trial court will not grant a new trial on that basis except in extraordinary circumstances. *People v. Steidl*, 142 Ill. 2d 204, 254, 568 N.E.2d 837, 858-59 (1991). Because recantation testimony is inherently suspect, it is treated with caution and is not sufficient to require a new trial absent proof the witness's earlier testimony was perjured. *People v. Lawson*, 232 Ill. App. 3d 284, 298, 596 N.E.2d 1235, 1245 (1992).

A ruling on a motion for a new trial asserting newly discovered evidence is reviewed for abuse of discretion. *People v. Smith*, 177 Ill.

2d 53, 82, 685 N.E.2d 880, 892 (1997). Abuse may be found only if a trial court's evaluation is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the court. See *People v. Donoho*, 204 Ill. 2d 159, 182, 788 N.E.2d 707, 721 (2003).

Defendant contends the State's evidence against him was not overwhelming, as it was merely "he said/she said." Because the jury acquitted him on every charge except one, he contends it is obvious Heather did not have much credibility with the jury. The evidence is even less overwhelming if Heather's recantation of the "she said" testimony is considered. Defendant considers Heather's recantation to be evidence she testified falsely and not mere impeachment.

At most, Heather's alleged statements she testified to regain her children would establish a reason for her testimony that could be used to discredit her. But testimony that merely serves to contradict, impeach, or discredit a witness is not enough to require a new trial. See *Smith*, 177 Ill. 2d at 83, 685 N.E.2d at 892. The unsworn statements of two inmates, who would have reason to be biased against the State, did not clearly establish Heather admitted lying or that she was withdrawing her accusations against defendant. They suggest she felt compelled or pressured to testify and not drop the charge due to pending juvenile neglect and termination proceedings. In addition, Heather's alleged statement she was told what to say was contradicted by evidence that she (1) reported the offense to Dr. Wernsman shortly after her escape from defendant; (2) ran into the cab offices and hid, stating she was running from her husband or boyfriend; and (3) reported being beaten and sexually assaulted to police. These statements were all made prior to the time anyone in relation to her DCFS case could have told Heather to accuse defendant. Heather's trial testimony as to her ordeal, abuse, and sexual assault was corroborated by her physical condition. Thus, defendant's evidence did not clearly establish Heather's trial testimony was perjured.

The only evidence of Heather's alleged recantation of her testimony was found in the questionably admitted statements of the two inmates, and they were given the consideration they deserved by the trial court. Thus, the court's determination the evidence at the posttrial hearing was "woefully short of the standard required to grant a motion for a new trial" was not an abuse of discretion.

## C. Ineffective Assistance of Counsel

■ To prevail on a claim of ineffective assistance of counsel, defendant must prove his counsel made a mistake and that he was prejudiced by that mistake. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Defendant

must show counsel's performance fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, the result in the trial court would have been different. *People v. Reid*, 179 Ill. 2d 297, 310, 688 N.E.2d 1156, 1162 (1997). Courts indulge in a strong presumption that counsel's conduct fell within the range of reasonable professional assistance. *People v. Szabo*, 186 Ill. 2d 19, 27, 708 N.E.2d 1096, 1101 (1998). The court must evaluate counsel's performance from counsel's perspective considering the totality of the circumstances. *People v. Howery*, 178 Ill. 2d 1, 55, 687 N.E.2d 836, 862 (1997). Allegations arising from matters of judgment or trial strategy will not support a claim of ineffective assistance of counsel. *People v. Madej*, 177 Ill. 2d 116, 148-49, 685 N.E.2d 908, 924 (1997), *overruled on other grounds in People v. Coleman*, 183 Ill. 2d 366, 701 N.E.2d 1063 (1998). Trial strategies themselves are unsound only when no reasonably effective criminal defense attorney, facing similar circumstances, would pursue them. *People v. Sims*, 322 Ill. App. 3d 397, 406, 750 N.E.2d 320, 327 (2001).

Defendant first contends defense counsel was ineffective for failing to preserve the issue of the prosecutor arguing facts not in evidence. He contends counsel had an obligation not only to object to the improper argument but also to raise the issue in the posttrial motion (see *People v. Enoch*, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988)) and he did neither.

A decision whether to object to an argument is a matter of trial strategy and does not establish ineffective assistance of counsel. See *People v. Pecoraro*, 144 Ill. 2d 1, 13, 578 N.E.2d 942, 947 (1991). Plus, as we noted earlier, the prosecutor's argument was not improper, and therefore defense counsel's failure to object to it could not have been ineffective assistance.

Defendant next alleges defense counsel was ineffective for his failure to subpoena Heather to testify to her recantation at the hearing on the motion for new trial.

Whether to call certain witnesses is a matter of trial strategy, and such decisions enjoy a strong presumption they are sound and therefore they are not usually found to be the basis for a finding of ineffective assistance of counsel. See *People v. Enis*, 194 Ill. 2d 361, 378, 743 N.E.2d 1, 12 (2000). It may have been counsel's trial strategy not to subpoena Heather. Counsel may have been concerned if he subpoenaed her she would have been uncooperative and possibly denied her alleged recantation at the posttrial motion hearing. Under similar circumstances, this court found counsel's failure to subpoena an allegedly recanting witness did not support a finding of ineffectiveness because the witness may have been uncooperative and, in addi-

tion, nothing indicated had the witness been subpoenaed the court would have granted a new trial due to the difficulty in obtaining a new trial based on recanted testimony. *People v. Norton*, 244 Ill. App. 3d 82, 86, 614 N.E.2d 31, 33-34 (1992). While Heather may have felt compelled to *testify* against defendant due to pending termination proceedings involving her children, it did not mean the charges against him were false. Thus, a new trial was by no means insured even if Heather had testified.

In addition, where a defendant waives counsel and represents himself, he is responsible for the conduct of the proceedings. See *People v. Amos*, 204 Ill. App. 3d 75, 80-81, 561 N.E.2d 1107, 1112 (1990). Having assumed that responsibility, defendant cannot then complain of ineffectiveness on the part of his counsel.

We find no basis to support defendant's claims of ineffectiveness of counsel.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would remand for a rehearing on the motion for a new trial. The trial court did not weigh any evidence in this case; it simply refused to allow evidence to be admitted.

When defendant alleges that a witness against him admitted she lied at trial, a number of questions are raised. The first question is whether there was in fact such an admission. If there was such an admission, what were the details? Did the admission go to a crucial part of the case or only some minor issue? Finally, what was the motivation for the admission? What ties did the witness have to defendant? Did defendant exert some sort of influence to obtain the admission? Does the witness stand by her admission or by her testimony at trial?

Of course, a witness's admission that her testimony was perjured does not provide defendant with an automatic pass. There are many reasons to be suspicious of such admissions. However, a truthful admission by the complaining witness that her testimony was perjured may completely destroy the prosecution's case.

"Recantation by a witness of his testimony on a trial does not *necessarily* entitle a defendant to a new trial. Recanting testimony

> is regarded as very unreliable, and a court will usually deny a new trial based on that ground *where it is not satisfied that such testimony is true.*" (Emphases added.) *People v. Marquis*, 344 Ill. 261, 265, 176 N.E. 314, 315 (1931).

Because of the importance of the issue, the trial court should carefully consider defendant's evidence and arguments and not simply reject them out of hand.

Sometimes a defendant's motion may be summarily rejected because it is apparent the witness never even spoke to the defendant or anyone on his behalf. That is not this case. There is no dispute that Heather came to the McLean County jail, under an assumed name, and spoke to defendant. (Why did she use an assumed name?) The question before the trial court was not whether Heather spoke to defendant but what she said.

The prosecution's strategy in this case was not to address or attempt to rebut what Heather said but to prevent defendant from offering evidence of what was said. I do not understand how defendant's testimony of what Heather had said could be excluded as hearsay (and the unsworn statements of the two inmates admitted). Defense testimony of what the witness had said out of court was admitted in *Steidl*. *Steidl*, 142 Ill. 2d at 250-51, 568 N.E.2d at 857. The hearsay rule does not prevent introduction of a witness's prior inconsistent statements. The unrebutted testimonies of defendant and the two inmates indicate Heather admitted her testimony was a lie. What is Heather's response? In *Steidl*, witness Rienbolt testified at the post-trial hearing and denied recanting her testimony. *Steidl*, 142 Ill. 2d at 251, 568 N.E.2d at 857. The same occurred in other cases. See, *e.g.*, *People v. Ellison*, 89 Ill. App. 3d 1, 6-7, 411 N.E.2d 350, 353-54 (1980). Why did Heather not testify in this case? What did Heather tell the prosecution about her alleged admission? Heather was a prosecution witness, and it appears it was the prosecution who called the witness in the cited cases. Defendant here may have called Heather himself if he could have anticipated that his testimony would be excluded as hearsay.

The majority goes both ways on Heather's testimony. The majority questions whether the "alleged statements" even exist and concludes no clear evidence shows Heather admitted lying. The majority then suggests that even if Heather admitted she was told what to say, her admission was contradicted by her reports to Dr. Wernsman, to the cab office, to the police, and her trial testimony. Again, I suggest that we are past the first stage in this case. Heather clearly said something to defendant. Defendant should have been allowed to say what it was. If Heather told defendant she had lied under oath, as defendant stated

in his letter to the trial court, Heather should have been asked to confirm or deny that she had admitted false testimony. We should not be required to speculate on what Heather might or might not say, and it ill-becomes the prosecution to complain of defendant's lack of evidence which the prosecution succeeded in improperly excluding.

This is not a case where the testimony "merely serves to contradict, impeach, or discredit a witness." 356 Ill. App. 3d at 243. The witness here was the complaining witness, not an eyewitness or a supporting witness. Heather's testimony went to the heart of this case. If Heather was lying when she gave her core testimony, there was no case. This is not a situation where a third-party witness comes forward to contradict, impeach, or discredit the testimony of other witnesses. In *Steidl*, the witness's current testimony was that she had testified truthfully at trial. The witness's recantation was not her current testimony and was relevant only as impeachment. That is not the case here. The most recent report from Heather is that her testimony at trial was a lie.

*Steidl* did not say that allegations of recantations may be summarily dismissed. *Steidl* recounted the factors that warranted the denial of the motion for new trial: defense counsel initiated the contact with witness Rienbolt, Rienbolt was a codefendant serving a five-year term, Rienbolt was an alcoholic and had various drug dependencies, witnesses to the Wells recantation were shown to have questionable reputations for truth and veracity, witness Herrington's recorded statements were all made as answers to leading questions, and the recorded statement was replete with off-the-record conversations. Perhaps most important, all three witnesses stated, at the posttrial hearing, that they testified truthfully at the trial. *Steidl*, 142 Ill. 2d at 250-55, 568 N.E.2d at 857-59. In the present case, the alleged recanting witness is not a codefendant, but the complaining witness, and the recanting witness did not take the stand to deny the recantation.

The argument could be made that in *Steidl* there was a written affidavit signed by the witness admitting perjury. Does the scrutiny of *Steidl* come into play only when the witness signs an affidavit? I suggest not. It would be intolerable if a witness could brag about her perjured testimony but defendant would be without a remedy unless he could persuade her to sign an affidavit. In a particular case, testimony of an oral recantation could be very persuasive.