# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Hubner, 2013 IL App (4th) 120137**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDGAR D. HUBNER, SR., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0137 |
| Filed | April 3, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for criminal sexual assault was upheld over his contention that the prosecutor's arguments that defendant's apologies to the victim, her mother and the police demonstrated "evidence of a guilty man" deprived defendant of a fair trial, since the arguments were based on the evidence and legitimate inferences from the evidence of defendant's apologies, and the jury could reasonably infer that defendant was apologizing for his misconduct, even though his apologies were not directly connected to any specific act, but the order for reimbursement for defendant's appointed counsel was reversed and remanded for a hearing on his ability to pay. |
| Decision Under Review | Appeal from the Circuit Court of Ford County, No. 11-CF-62; the Hon. Stephen R. Pacey, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on Appeal

Michael J. Pelletier, Karen Munoz, and Duane E. Schuster, all of State Appellate Defender's Office, of Springfield, for appellant.

Matthew Fitton, State's Attorney, of Paxton (Patrick Delfino, Robert J. Biderman, and Luke McNeill, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.

Justices Appleton and Pope concurred in the judgment and opinion.

## OPINION

¶ 1    In October 2011, a jury convicted defendant, Edgar D. Hubner, Sr., of criminal sexual assault (720 ILCS 5/11-1.20(a)(1) (West 2010)), and the trial court later sentenced him to four years in prison. Defendant appeals, arguing that (1) the State's emphasis in closing argument on defendant's "alleged apologies" as demonstrating "evidence of a guilty man" deprived him of a fair trial and (2) the court erred by not conducting a hearing before ordering defendant to pay $250 in reimbursement for his court-appointed counsel. We reject defendant's first argument and affirm his conviction and sentence; however, because we agree with his second argument, we vacate the reimbursement order and remand to the court with directions that it conduct a proper hearing.

¶ 2                                    I. BACKGROUND

¶ 3    In July 2011, the State charged defendant with criminal sexual assault, alleging that he committed an act of sexual penetration with T.B. in that by the use of force he placed his finger in her vagina. 720 ILCS 5/11-1.20(a)(1) (West 2010). At defendant's October 2011 jury trial, T.B. testified that she was 15 years old and an acquaintance of defendant's son, Eddy. On July 12, 2011, at about 9 p.m., T.B. and Eddy arrived at his father's apartment to watch movies. T.B. knew defendant very well from being friends with his sons, Nate and Eddy. T.B. later decided that she did not want to walk home because it was late, so she contacted her family for permission to stay the night, which she received. Around midnight, she fell asleep on an air mattress.

¶ 4    Around 3 a.m., T.B. awakened and saw defendant sitting in the same room, eating and drinking. She went back to sleep and woke up around 5 a.m. when Eddy's mother (who lived apart from defendant) called Eddy to go to her residence to babysit. T.B. heard the call and then went back to sleep. After Eddy left, only defendant and she remained in defendant's apartment.

¶ 5   T.B. next awakened to discover defendant grabbing her shorts. She was scared and rolled away from him, but he pulled her back. Defendant then went under her blanket, grabbed her shorts, and started pulling them down. She tried to pull her shorts up and told defendant to stop. After telling him to stop three or four times, he said, "Fine, I hear ya," and stopped. Then, within seconds, defendant stuck his hand inside T.B.'s shorts and underwear and placed his finger in her vagina. At that moment, Eddy walked in the apartment, and the defendant jumped up and away from T.B.

¶ 6   T.B. retrieved her belongings and left the apartment. When T.B. returned home, she told her older sister what had happened and told her mother, Tawny Britz, after Britz returned home from work. Britz told T.B. that calling the police was the right thing to do, but T.B. was scared to do so because "something like this had never happened to her before."

¶ 7   T.B. and Britz went to defendant's apartment that same afternoon, and Britz asked defendant about what had happened with T.B. that morning. According to T.B., defendant responded that "he doesn't remember, that he was drunk, and that he was sorry. And I remember him looking at me and telling me that he is sorry and deserves worse, and he [']deserves to go to jail,['] exact words."

¶ 8   Later that day, T.B. and Britz spoke to Officer Chad Johnson of the Paxton police department about defendant's behavior with T.B.

¶ 9   On cross-examination, T.B. first stated that she could not really remember whether Britz had made a specific allegation about what defendant had done to T.B., but then she was asked the following: "So you don't remember if your mother ever said anything to him about digitally penetrating you or anything like that?" T.B. responded, "She did, but he said [']I don't remember.['] "

¶ 10   Tawny Britz testified that T.B. told her what had happened with defendant after Britz got home from work. Britz went with T.B. to defendant's house to confront him. Britz was very angry with defendant and was screaming at him. Britz testified that defendant apologized numerous times, saying, " [']I am sorry. I was drunk. I didn't know what I was doing, and I don't remember anything.['] "

¶ 11   Britz testified that she got tired of listening to defendant and then slapped him as hard as she could across the face. T.B. then jumped up and started screaming at her, "Mom, don't do this. You are going to go to jail." Defendant then said to T.B., " [']No, don't stop her. I deserve it. I deserve worse. I deserve to go to jail.['] "

¶ 12   On cross-examination, Britz was asked if she ever accused defendant of any specific act. She responded that when she confronted defendant, she referred to his conduct as "messing with my daughter." Defendant responded by making numerous apologies and said that he was too drunk to remember. Defendant added that "it was possible" because he did not remember.

¶ 13   Johnson testified that after speaking with Britz and T.B., he and Captain Coy Cornett of the Paxton police department went to defendant's apartment and informed him they were there regarding a sexual assault that he was accused of. After arresting defendant and advising him of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), defendant responded that he had already spoken "with [T.B.] and stated he was sorry, and that he

couldn't remember what happened that night."

¶ 14    Cornett's testimony corroborated Johnson's testimony. According to Cornett, defendant said he had already spoken with T.B., said he was sorry about the situation, but that he did not remember anything that happened.

¶ 15    Defendant testified on his own behalf and denied committing the sexual assault with which he was charged. He denied apologizing to T.B. and Britz, and he also denied telling the officers that he had apologized to T.B.

¶ 16    The prosecutor emphasized at various points during his closing argument that defendant had apologized to T.B., Britz, and the police. After making multiple references to defendant's apologies, the prosecutor stated the following: "I would argue, ladies and gentlemen, that the apologies he made to [T.B.], to [Britz], and to the two police officers [who] testified are evidence of a guilty man."

¶ 17    On this evidence, the jury convicted defendant, and this appeal followed.

¶ 18                                          II. ANALYSIS

¶ 19    Defendant argues that the State's emphasis on defendant's "alleged apologies" as demonstrating "evidence of a guilty man" deprived him of a fair trial because those apologies neither directly acknowledged guilt nor directly and necessarily implied guilt. We reject this argument.

¶ 20          A. Defendant's Argument That the State's Emphasis in Closing Argument
                              on His Apologies Was Improper

¶ 21    Defendant contends that even taking the testimony of the State's witnesses at face value, "that testimony indicates that [defendant] repeatedly apologized, but also repeatedly stated that he did not remember what had happened." Thus, defendant further contends, because the State's witnesses conceded that defendant did not admit the commission of any specific criminal act, defendant's "alleged apologies were not statements directly acknowledging guilt or directly and necessarily implying guilt." Therefore, defendant concludes the State's emphasis on these alleged apologies as "evidence of a guilty man" was "improper and erroneous." We emphatically disagree.

¶ 22    In support of defendant's contention that the prosecutor's closing argument deprived him of a fair trial, defendant's analysis focuses primarily upon whether his alleged apologies, "unaccompanied by any other specifically incriminating statement," constitute either an admission or a confession of guilt. He asserts that because defendant did not admit the commission of any specific criminal act, (1) his alleged apologies did not constitute either an admission or a confession and (2), accordingly, the State's closing argument was improper. In support of this assertion, defendant cites *People v. Stewart*, 105 Ill. 2d 22, 473 N.E.2d 840 (1984), *People v. Kircher*, 309 Ill. 500, 141 N.E. 151 (1923), *People v. Helm*, 69 Ill. App. 3d 78, 387 N.E.2d 24 (1979), *People v. Chamness*, 129 Ill. App. 3d 871, 473 N.E.2d 476 (1984), *People v. Davis*, 130 Ill. App. 3d 41, 473 N.E.2d 387 (1984), and *People v. Watson*, 2012 IL App (2d) 091328, 965 N.E.2d 474. However, because none of these cases

addresses the issue before us, they are all inapposite and provide no support for defendant's argument.

¶ 23    B. Closing Arguments Are Always Proper if They Are Based Upon
Reasonable Inferences From the Evidence

¶ 24    Defendant's focus on whether his apologies were statements directly acknowledging his guilt or directly and necessarily implying guilt is off the mark. Instead, the correct issue is whether the jury could reasonably draw certain inferences from the evidence before it. If a jury could do so, then no attorney–including the prosecutor–commits error by urging the jury to draw those inferences.

¶ 25    This rule of law is hardly new or novel. Over 100 years ago, the Supreme Court of Illinois addressed a defendant's claim that the prosecutor's closing argument was improper and wrote the following:

"It is not improper for a prosecuting attorney to reflect unfavorably on defendant or denounce his wickedness, and even indulge in invective, if based upon evidence competent and pertinent to be decided by the jury. *** Whatever is deducible from the testimony by direct proof[,] *or legitimate inference from facts that are proven*, and which bears upon the issue in a cause, must be a fair subject of comment by counsel, and if such deductions or inferences tend to fix upon a defendant the wickedness and crime that are charged against him, it must be within the scope of proper and fair argument to denounce him accordingly." (Emphasis added.) *Crocker v. People*, 213 Ill. 287, 290-91, 72 N.E. 743, 744 (1904).

The supreme court repeated this point 57 years ago in *People v. Halteman*, 10 Ill. 2d 74, 83-84, 139 N.E.2d 286, 293 (1956), as follows: "[O]nly recently we reaffirmed our previous holdings to the effect that statements of counsel based upon the facts, or upon legitimate inferences deduced therefrom, do not transcend the bounds of debate and are not to be discountenanced by the courts."

¶ 26    This court has more recently reiterated the same theme, writing in *People v. Rushing*, 192 Ill. App. 3d 444, 454, 548 N.E.2d 788, 794 (1989), the following: "Arguments and statements based upon facts in evidence or upon legitimate inferences from such evidence are not outside the bounds of proper argument." And just 15 months ago, this court wrote the following in *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 29, 963 N.E.2d 394:

"Just as the jury is entitled to draw inferences from the evidence that are reasonable [citation], the attorneys–including the prosecutor–may argue those inferences. To the extent that the jury could reasonably infer certain facts, the prosecutor is justified in arguing them."

¶ 27    Last, we note that this rule of law is even incorporated into the standard set of instructions given to the jury in all criminal cases. Specifically, Illinois Pattern Jury Instructions, Criminal, No. 1.03 reads, in pertinent part, as follows: "Closing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence *and to reasonable inferences to be drawn from the evidence*."

(Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 1.03 (4th ed. 2000).

¶ 28                    1. *Could the Jury Reasonably Draw the Inferences*
                          *in This Case That the Prosecutor Argued?*

¶ 29     As defendant correctly notes, the prosecutor emphasized at various points during his closing argument that defendant had apologized to T.B., Britz, and the police. The prosecutor made explicit his reason for doing so when he argued to the jury that the apologies defendant made are "evidence of a guilty man." So, the initial question for this court to resolve is whether the jury could reasonably infer that defendant was apologizing for his sexual misconduct with T.B. even assuming, as defendant argues, his apologies were not directly connected to the commission of any specific criminal act. On this record, of course, the answer is obvious: that inference is compelling. Indeed, defendant provides no alternative explanation for why he was apologizing to the victim, her mother, and the police, and none is apparent on this record.

¶ 30     Having concluded that the jury could reasonably draw the inference that defendant was apologizing for his sexual misconduct with T.B., we need engage in no further analysis to determine that the prosecutor could properly urge the jury to so infer. Nonetheless, we point out that the facts of this case are exceptional in that the inference the prosecutor asked the jury to draw is so compelling. The rule of law at issue–namely, that the prosecutor may argue any inferences that the jury could reasonably draw–does not require evidence nearly as strong as that in the present case. Indeed, the key is to ask whether the jury could *reasonably* draw the inference, not whether the circumstances are compelling for the inference to be drawn.

¶ 31                      2. *The Prosecutor's Argument in This Case*

¶ 32     The prosecutor's argument in this case–inferring that defendant's repeated apologies are "evidence of a guilty man"–was entirely consistent with the same inference that the jury could draw based upon the evidence before it. Thus, we emphatically reject defendant's contention that the prosecutor's closing argument deprived him of a fair trial.

¶ 33     In so concluding, we reiterate what this court recently wrote in *People v. Montgomery*, 373 Ill. App. 3d 1104, 1118, 872 N.E.2d 403, 415 (2007), and *Dunlap*, 2011 IL App (4th) 100595, ¶ 28, 963 N.E.2d 394, that "trying felony cases before a jury 'ain't beanbag.' " We added the following in *Dunlap*:

> "[F]elony criminal trials are serious matters with high stakes, and we expect advocates in our adversarial system of justice–both prosecutors and defense attorneys–to 'use all of their forensic skills to persuade the jury of the wisdom or justice of their respective positions.' [Citation.] We continue to be disinclined to become the 'speech police' by imposing unnecessary restrictions upon closing arguments in criminal cases, and we encourage counsel to vigorously advocate for their position." *Id.*

¶ 34     Consistent with what we wrote in *Montgomery* and *Dunlap*, we deem the prosecutor's closing argument in the present case to be entirely appropriate.

¶ 35 C. The Trial Court's Order for Reimbursement for Court-Appointed
Counsel Is Reversed and the Matter Remanded for a New Hearing

¶ 36 Defendant next argues that because the trial court failed to conduct a proper hearing before ordering him to pay $250 in reimbursement for court-appointed counsel, that order should be reversed and this court should remand for an appropriate hearing to be conducted. The State concedes defendant's argument, and we accept the State's concession.

¶ 37 At the conclusion of defendant's sentencing hearing, the following discussion took place:

"I will order [defendant] to pay Court costs and Crime Stoppers fee and Public [Defender] fees of $250. [Defendant], that's a reasonable figure for [defense counsel's] services for having gone through a [j]ury [t]rial. If you have some objection to that, we could have a hearing–

THE DEFENDANT: I will pay it.

THE COURT: –on why that's an unreasonable figure. I will order those paid within six months of your release from the Department."

¶ 38 Section 113-3.1(a) of the Code of Criminal Procedure of 1963 provides as follows:

"Whenever *** the court appoints counsel to represent a defendant, the court may order the defendant to pay to the [c]lerk of the [c]ircuit [c]ourt a reasonable sum to reimburse either the county or the State for such representation. In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant under [s]ection 113-3 of this Code and any other information pertaining to the defendant's financial circumstances which may be submitted by the parties." 725 ILCS 5/113-3.1(a) (West 2010).

¶ 39 The Supreme Court of Illinois held 16 years ago in *People v. Love*, 177 Ill. 2d 550, 555, 687 N.E.2d 32, 35 (1997), that the above language clearly requires the trial court to conduct a hearing into a defendant's financial resources as a precondition to ordering reimbursement. In *People v. Barbosa*, 365 Ill. App. 3d 297, 301-02, 849 N.E.2d 152, 155 (2006), this court reaffirmed what we wrote one year after *Love* in *People v. Johnson*, 297 Ill. App. 3d 163, 164-65, 696 N.E.2d 1269, 1270 (1998), that an adequate *Love* hearing need not be lengthy or complex. Instead,

"The statutorily required hearing need only (1) provide the defendant with notice that the trial court is considering imposing a payment order, pursuant to section 113-3.1 of the Code, and (2) give the defendant an opportunity to present evidence regarding his ability to pay and other relevant circumstances, and otherwise to be heard regarding whether the court should impose such an order." *Id.*

The record before us shows that the court erred by doing none of that before imposing the reimbursement order. Accordingly, we reverse the court's reimbursement order and remand for a hearing in conformity with section 113-3.1 of the Code.

¶ 40 III. CONCLUSION

¶ 41 For the reasons stated, we affirm defendant's conviction and sentence, reverse the reimbursement order for court-appointed counsel, and remand for a hearing in conformity

with section 113-3.1 of the Code. Because the State successfully defended a portion of the criminal judgment, we grant the State its $50 statutory assessment against defendant as costs of this appeal. See *People v. Smith*, 133 Ill. App. 3d 613, 620, 479 N.E.2d 328, 333 (1985) (citing *People v. Nicholls*, 71 Ill. 2d 166, 178, 374 N.E.2d 194, 199 (1978)).

¶ 42        Affirmed in part and reversed in part; cause remanded with directions.